**In re Gerald L. HELMICK and Bette Jo Helmick, Debtors.**

**Bankruptcy No. 90–1609.
Motion No. 90–4272M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

July 26, 1990.

Joseph M. Fornari, Jr., Asst. U.S. Trustee, Pittsburgh, Pa.

Herbert G. Mitchell, Jr., Hiller, Pa., for debtors.

MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a *Motion To Dismiss Pursuant To 11 U.S.C. § 707(b)* filed by the United States Trustee ("Trustee").

Trustee contends that Gerald and Bette Jo Helmicks' ("Debtors") Chapter 7 bankruptcy case should be dismissed because Debtors' Schedule of Current Income and Current Expenses ("Schedule") reflects a monthly disposable income (income less expenses) of $294.51. Because Debtors list $26,495.25 as nonpriority unsecured claims against them, Trustee avers that Debtors have the ability to fund a Chapter 13 Plan.

Debtors response takes the form of a proposed amended Schedule, which basically increases existing expenses and adds new expenses to an already non-spartan budget.

Granting Debtors relief under Chapter 7 would be a substantial abuse of the provisions of that Chapter because it would appear that Chapter 13 is a viable alternative.

Trustee's motion to dismiss pursuant to § 707(b) will be granted. However, should Debtors request reconsideration and attach a viable Chapter 13 petition thereto, within ten (10) days, the Court will reconsider and determine at that time whether Debtors should be permitted to proceed under Chapter 13 of the Bankruptcy Code.

## FACTS

Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 30, 1990. Their Statement of Financial Affairs represents that Debtor Gerald L. Helmick has been employed at the USX Cumberland Mine for a period of twelve (12) years and is presently the Assistant Mine Foreman. Debtor Bette Jo Helmick has recently been gainfully employed but at present is voluntarily unemployed.

Debtors list their gross income for 1988 as $52,231.03 and their gross income for 1989 as $69,400.00. However, Debtors list their estimated future monthly take home pay as $2,700.00 (or $32,400.00 per year). Mr. Helmick testified that the figures for 1988 and 1989 represented Debtors' combined gross pay, including compensation paid Mr. Helmick for overtime work. He advised that he would be performing less overtime work in the future due to a recent voluntary change in work status from 'inside' to 'outside' the mine.

Debtors' list of estimated future monthly expenses includes substantial sums for shelter, utilities, and food. In addition, it also includes items which border on luxuries.

Debtors, in response to Trustee's motion, seek to amend their Schedule to reflect increased expenses for clothing (an additional $140.00 for a total $290.00 per month) and transportation (an additional $60.00 for a total $190.00 per month, not including their listed car payments and auto insurance). In addition, Debtors seek to list previously unreported monthly expenses for eye care, estimated house repairs, payment on a riding lawn mower, as well as payment on two (2) automobiles.

Debtors' original Schedule showed a monthly surplus of disposable income of $294.51. Debtors' proposed amended Schedule shows a monthly deficit of disposable income of $500.60.

Debtors' unsecured debt primarily consists of credit card debt for cash advances and for the purchase of, *inter alia*, weight-lifting equipment, furniture, fishing supplies, gifts, jewelry, cologne, and various miscellaneous items. Debtors' unsecured debt totals $26,495.25.

Debtors' secured debt consists of the mortgage on their residence, located in Carmichaels, Pennsylvania, and the debt on two automobiles. This secured debt totals $43,735.88.

Trustee filed the pending Motion To Dismiss based on the original Schedule's monthly surplus of $294.51. A hearing on the Motion was held on July 10, 1990, wherein testimony was taken.

## ANALYSIS

Section 707(b) of the Bankruptcy Code reads as follows:

After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer

debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b) (1986).

The pending Motion was filed by the Trustee and not by any party in interest. Trustee's Motion To Dismiss avers that Debtors' debts are primarily consumer in nature as defined in the Code. *Motion To Dismiss Pursuant To 11 U.S.C. § 707(b)*, ¶ 5. "Consumer debt" is defined as "debt incurred by an individual primarily for a personal, family, or household purpose". 11 U.S.C. § 101(7).

█ After examining the nature of Debtors' obligations, and the definitions provided in the Code, the Court is convinced that these debts are in fact primarily consumer. There is no suggestion that any of this debt was incurred for a purpose other than personal, family, or household. The Court concludes, therefore, that Debtors' obligations are primarily consumer debts within the meaning of § 707(b). See, e.g., *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 912–13 (9th Cir.1988) (home mortgage is a consumer debt. Look to purpose of debt to determine if it serves a personal, family, or household purpose and, therefore, is consumer debt).

█ Even though Debtors' obligations are primarily consumer debts, dismissal is not authorized pursuant to § 707(b) unless the Court additionally finds that to do otherwise would be a substantial abuse of Chapter 7's provisions. Congress chose not to provide a definition for 'substantial abuse'. As a result, courts have been left to infer Congressional intent. Courts have generally looked to see if the bankruptcy petition was filed in bad faith or if the debtor had the apparent ability to fund a Chapter 13 plan. Substantial abuse has been found to exist when a filing has been in bad faith or the debtor is able to fund a Chapter 13 plan. See, e.g., *In re Walton*, 866 F.2d 981 (8th Cir.1989); *In re Krohn*, 886 F.2d 123 (6th Cir.1989); *Kelly*, 841 F.2d at 908; *In re Grant*, 51 B.R. 385 (Bankr. N.D. Ohio 1985). Filing in bad faith and

ability to fund a Chapter 13 plan are often intertwined. A bad faith filing often makes it appear as if a Chapter 13 plan is not feasible. Such is the case in the pending action.

█ The evidence before the Court from Debtors' documents and testimony, compels the conclusion that Debtors filed for Chapter 7 protection in bad faith. Of significance in this regard is the widely varying income reported by Debtors. Under penalty of perjury, Debtors declared gross income of $52,231.03 for 1988 and $69,490.00 for 1989. This $17,258.97 increase in income constitutes an increase of thirty-three percent (33%) from 1988 to 1989. Yet Debtors' Schedule, confirmed by Mr. Helmick's testimony, reflects an estimated future take home pay of $2,700.00 or $32,400.00 per year. The Court realizes that the 1988 and 1989 figures are for gross pay while the estimated future income is in terms of net take home pay. However, Debtors' taxes certainly would not have amounted to some thirty-eight percent (38%) to fifty-three percent (53%) of gross income. Instead, it appears as if Debtors reduced income is due solely to Debtors' elective reduction of their workload just prior to filing bankruptcy.

Mr. Helmick testified as to two (2) reasons why Debtors' projected income would be only $2,700.00 per month. First, Mrs. Helmick voluntarily quit her part-time job which was paying her approximately $10,000.00 per year. Second, Mr. Helmick testified that, although his base salary has not changed, he would be unable to work as much overtime in the future as he had in the past, as a result of his change in job status from 'inside' to 'outside' the mine. The Court is not satisfied with either explanation.

A debtor who voluntarily leaves a $10,000.00 a year job on the eve of bankruptcy without showing the necessity thereof, impresses the Court as a bad faith filer. The Court is cognizant of the fact that Debtors have three (3) children. However, no evidence was produced as to their ages or their care provider. There is no indication

that Mrs. Helmick would not return to work if Debtors were granted discharge. Mrs. Helmick's actions must be seen as a calculated move on her part to lower her family's income just prior to filing bankruptcy.

Mr. Helmick introduced into evidence an unverified letter from an individual calling himself Martin A. Murcek, M.D. As the Trustee offered no objection, the Court examined the letter and concluded, contrary to Mr. Helmick's claim, that Mr. Helmick is to be relocated 'outside' the mine only on a temporary basis. In fact, Dr. Murcek's letter recommends only that "at least for the time being, [Mr. Helmick] be given an opportunity to work ['outside'] until we can treat and further control his reactive airway disease [mold sensitivity]". *Dr. Murcek's letter.* The Court concludes, based on this evidence, that Mr. Helmick will be able to return to working 'inside' the mine sometime in the future. When he does so, at the latest, Mr. Helmick should be able to resume working the overtime hours he claims will be lost as a result of his move 'outside'. It should be noted that as of the hearing date Mr. Helmick had been 'outside' for just three (3) weeks.

Additionally, no evidence was presented as to why working 'ouside' would drastically reduce Mr. Helmick's overtime hours. It appears that if there is activity within the mine, then there would be a call for activity outside as well. At the least, Debtor had a duty to clarify this matter, since some explanation was in order.

It appears to the Court that both Mr. and Mrs. Helmick have voluntarily reduced their work hours and income in a calculated attempt to reduce their income on the eve of bankruptcy. The bad faith exhibited by Debtors in this regard severely affects their ability to fund a Chapter 13 Plan. Had Debtors not taken it upon themselves to reduce their income just prior to seeking protection under the bankruptcy laws, a Chapter 13 Plan would have been feasible and, in the Court's eye, still is. In fact, Debtors' original Schedule would allow for a sixty-seven percent (67%) payment to unsecured creditors over a sixty (60) month period. With a little 'belt tightening' a one-hundred percent (100%) plan should be feasible. This alone is sufficient reason to dismiss Debtors' case. See, e.g. *Krohn,* 886 F.2d at 126–27; *Kelly,* 841 F.2d at 913–15.

In an effort to give effect to the "presumption in favor of granting the relief requested by the debtor", 11 U.S.C. § 707(b), the Court attempted to grant Debtors "the benefit of the doubt", *Kelly,* 841 F.2d at 917, in this matter. However, the evidence presented removed any doubt that may have been statutorily imposed.

Debtors have reaffirmed four (4) of their secured debts relating to their home, their 1989 Pontiac Grand Prix, their 1984 Ford, and their 1988 riding lawn mower. In addition, Debtors have exempted their Kawasaki Jet Ski. Debtors have *not* reaffirmed any of their credit card debt. The Court also notes that Debtors' estimated future expenses include cable TV, a $1,200.00 yearly stipend for recreation and entertainment, a $2,280.00 yearly allowance for transportation, excluding car payments and insurance, $3,480.00 yearly for clothes, and $900.00 per year for household items and toiletries. The foregoing, as well as various other expenses seem more appropriate for a solvent, financially stable family than for a family seeking the protection of the bankruptcy laws.

The bankruptcy laws are intended to offer an overburdened but good faith debtor an opportunity to make a fresh start. Debtors herein have voluntarily burdened themselves with expensive items of debt while voluntarily reducing their ability to pay. Clearly, this is not what Congress envisioned when it enacted the Bankruptcy Code, nor is it the type of activity that this Court wishes to condone.

## CONCLUSION

Debtors filed their Chapter 7 petition in bad faith. In addition, Debtors appear to be able to fund a Chapter 13 Plan without suffering undue hardship. For these reasons, and those stated throughout this Opinion, the Court finds that granting these Debtors relief under Chapter 7 of the

Bankruptcy Code would be a substantial abuse of the provisions of that chapter. Consequently, pursuant to 11 U.S.C. § 707(b), the Court will dismiss Debtors' case. However, should Debtors, within ten (10) days of issuance of this Memorandum Opinion and Order, seek reconsideration, averring a desire to convert to Chapter 13, then the Court will consider vacating the accompanying Order and will review the proposed Plan attached to the motion for reconsideration.

An appropriate Order will be issued.