**In re Ronald Clark BICSAK, Debtor.**

**Bankruptcy No. 96–50667.**

United States Bankruptcy Court,
W.D. Missouri.

April 15, 1997.

Paula Acconcia, Office of the U.S. Trustee, Kansas City, MO, for Movant.

Lyle A. Odo, Platte City, MO, for Respondent.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtor Ronald Bicsak filed this Chapter 7 bankruptcy case on October 15, 1996. The United States Trustee (the "UST") moved this Court to dismiss the case for substantial abuse pursuant to 11 U.S.C. § 707(b). A hearing was held on April 2, 1997. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I grant the UST's motion and this bankruptcy case is hereby dismissed unless debtor moves to convert this case to one under Chapter 13 within 20 days of the entry of this opinion.

## FACTUAL BACKGROUND

Mr. Bicsak has worked for the United States Department of Agriculture in a management position for 10 years. Although he is presently single, he has lived with, and supported, Beverly Sedlacek for the past five years. They have a child born October 14, 1995. Indeed, debtor and Ms. Sedlacek were married on February 14, 1994, but the marriage was annulled in November of 1996 when Ms. Sedlacek discovered that her marriage to Matthew Perez had never been dissolved. She had custody of a child from her marriage to Perez when she began living with Mr. Bicsak. Mr. Bicsak testified that he provided support for the child until very recently when Ms. Sedlacek began to receive $490.00 per month in child support from Matthew Perez. Mr. Bicsak stated he intends to marry Ms. Sedlacek again as soon as she is legally divorced from Matthew Perez. He also claims that Mr. Perez is challenging Ms. Sedlacek for custody of their child. For the purposes of this proceeding, I will assume that Mr. Bicsak, Ms. Sedlacek, and the two children are a family unit, and that he may appropriately consider expenses need to support a family of four. By the same token, since the evidence shows that Ms. Sedlacek is now receiving $490.00 per month in child support, that figure will be used to supplement debtor's income.

The UST moved for dismissal in this case because Mr. Bicsak's bankruptcy schedules indicate that his income is in excess of his expenses. Debtor's bankruptcy schedules reflect income of $2,895 per month and expenses of $2,117 per month.[1] But an earnings statement provided to the UST by Mr. Bicsak indicated his annual salary as of December 21, 1996, was $58,979. By the time of this hearing on April 2, 1997, the evidence indicates that Mr. Bicsak's yearly salary is now $59,974.00, and his net monthly income is $3,166.58. Additionally, Mr. Bicsak claims to support both Beverly Sedlacek and her child from her marriage to Matthew Perez, so debtor must include the $490 per month Ms. Sedlacek receives from Mr. Perez. Mr. Bicsak's actual net monthly income, therefore, is $3,656.58. Based upon this income calculation and the expenses listed on his bankruptcy schedules, Mr. Bicsak's income exceeds his expenses by $1,539.58 per month.

## DISCUSSION

■■■ Based upon this excess income, the UST asks this Court to dismiss his Chapter 7 case because granting Mr. Bicsak the relief he seeks would be a substantial abuse of the Code. Section 707(b) of the Code does permit the Court to dismiss a Chapter 7 case if certain conditions are met:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but [and] not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in

favor of granting the relief requested by the debtor.[2]

Thus, the Court has discretion to dismiss this case if: (1) there is a hearing after notice; (2) the debts are consumer debts; and (3) granting relief would be a substantial abuse. A hearing was held on April 2, 1997, and it is undisputed that the debts at issue here are primarily consumer debts. The only issue to be resolved is whether granting relief would be a substantial abuse. The term "substantial abuse" is not defined by the Code.[3] As in other instances when the Code does not define a term, the Court is encouraged to examine the specific facts and circumstances of each case in exercising its discretion.[4] In the Eighth Circuit "a Chapter 7 debtor's ability to fund a Chapter 13 plan 'is the primary factor to be considered in determining whether granting relief would be substantial abuse.'"[5] In *Walton*, the Eighth Circuit agreed with the lower court that substantial abuse could be found where debtors had sufficient disposable income to repay more than two-thirds of their unsecured debt over three years.[6] Thus, the Eighth Circuit permitted the use of a mathematical test as one factor in 707(b) cases, holding that while "the statute does not mandate a future income test, we are satisfied that it does not preclude the consideration of future income in giving meaning to the 'substantial abuse' standard."[7] However, the Court refused to limit a substantial abuse analysis to a mathematical formula. It held that while debtors' future ability to repay is perhaps the most basic factor to be considered, "[c]ertainly the court may take the petitioner's good faith and unique hardships into consideration under section 707(b)."[8] However, the Eighth Circuit established in both *Walton* and *Har-*

---

1. Doc. # 11, Schedule "I" and "J."

2. 11 U.S.C. § 707(b).

3. *In re Walton*, 866 F.2d 981, 983 (8th Cir.1989); *In re Grant*, 51 B.R. 385, 392 (Bankr.N.D.Ohio 1985).

4. *United States Trustee v. Harris (In re Harris)*, 960 F.2d 74, 76 (8th Cir.1992); *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030, 1033 (6th Cir.1988) (using a facts and circumstances analysis in light of the lack of definition in the Code of "good faith").

5. *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1286 (8th Cir.1997) (quoting *In re Walton*, 866 F.2d 981, 984–85 (8th Cir.1989)); *United States Trustee v. Harris (In re Harris)*, 960 F.2d 74, 77 (8th Cir.1992).

6. *In re Walton*, 866 F.2d at 985.

7. *Id.*, at 984.

8. *Id.*, at 983.

*ris* that debtors' ability to repay a substantial portion of their unsecured debt is the starting point in any 707(b) case.

As demonstrated above, Mr. Bicsak has income, including the child support Ms. Sedlacek receives monthly, substantially in excess of their household expenses. Mr. Bicsak, however, testified at the hearing that the expenses listed on his bankruptcy schedules do not accurately reflect the expenses to which his future income will be subjected. First, debtor testified that beginning June, 1997, he must begin making payments of $490.00 per month on student loans. He stated that student loans are not dischargeable in his Chapter 7 bankruptcy,[9] therefore, the payment of $490 a month he must begin making in June of 1997 should be considered an expense now and subtracted from his excess income. This testimony is not consistent with a document from Sallie Mae Servicing that Mr. Bicsak introduced into evidence.[10] That document indicates that Mr. Bicsak's student loan repayment was in arrears as of July 26, 1996, before he filed his bankruptcy petition. Mr. Bicsak did not explain why he failed to schedule the student loan payment at the time he filed his Chapter 7 petition. He did, however, attempt to explain how he incurred such a large student loan debt. Mr. Bicsak stated that he has periodically attended graduate school at the Keller Graduate School of Management in order to obtain a Masters in Business Administration ("MBA"). To pay for his part-time evening classes, he incurred student loan debt in the amount of $39,195.00. In fact, the Sallie Mae loan document indicates debtor has borrowed $34,193 plus interest beginning in October of 1990.[11] Of that sum, the Department of Education subsidized $22,493. The Court contacted Keller Graduate School to inquire about its MBA program. The school explained that their courses are designed to accommodate the student with full-time employment. A student is expected to complete the course work in 18 months if he takes two classes a quarter, and to complete the course in 3 years if he takes one class a quarter. The tuition is currently $950 a quarter per course. I note that Mr. Bicsak has not completed his MBA. He indicated at the hearing that he is one course short of completion. The fact that a payment to Sallie Mae was considered past-due on July 26, 1996, indicates that he has not been enrolled in school for at least six months prior to that time.[12] These facts at least raise a question as to how an individual with a full-time job could incur student loan debt in excess of $39,000 while failing to complete an MBA program with a maximum tuition of $11,400.[13]

Mr. Bicsak also stated he intends to reaffirm his lease on a 1995 Ford Windstar Van. His original bankruptcy schedules indicate his intention to surrender the 1995 Ford Windstar Van, and he stated he has surrendered it to Ford Motor Credit. But he amended his Statement of Intention after the UST filed the Motion to Dismiss, and he claims he now wishes to reaffirm this obligation and retain the van.[14] The lease payments on the van are $410 per month.

Mr. Bicsak then explained that he wishes to continue making payments of $187.00 per month to Nations Bank. He told the Court that he doesn't actually owe the obligation to Nations Bank, but he feels obligated to make the payments. It seems that when he and Ms. Sedlacek decided to get married in 1994 he attempted to purchase wedding rings on credit. Unable to do so, he prevailed upon a friend, whose name is Charles Burden, to obtain a loan of $10,000 from Nations Bank. Debtor claims he used the money to purchase a $6000 ring for Ms. Sedlacek and a $1700 ring for himself. He used the remain-

---

9. 11 U.S.C. § 523(a)(8)(A).

10. Debtor's Doc. # 1.

11. *Id.*

12. Debtor's Doc. # 1.

13. Keller Graduate School indicated that the tuition for one course per quarter is currently $950. A student can complete a MBA in 18 months, or 6 quarters, if he takes two courses a quarter; or a student can complete a MBA in 3 years, or 12 quarters, if he takes one course a quarter. The tuition, therefore, is either $950 times 2 times 6; or it is $950 times 12. Total tuition is, thus, $11,400.

14. Doc. # 17.

der of the money for living expenses. I note that on his bankruptcy schedules, Mr. Bicsak listed his ring as having a value of $100.00. Mr. Burden apparently borrowed the funds from Nations Bank, and gave such funds to Bicsak, with the understanding that Bicsak would make the monthly payments due the Bank. He, therefore, wishes to reaffirm this obligation and continue making the payments in the amount of $187 per month.

Finally, Mr. Bicsak testified that Ms. Sedlacek and Matthew Perez are engaged in a protracted child custody dispute, and that the child is under psychiatric care. Debtor estimates that it will cost approximately $5,000.00 in attorney's fees to litigate the matter, therefore, he wishes to set aside $300 per month to pay these anticipated attorney's fees. He contends that, since Ms. Sedlacek and her son have lived with him for the past five years, and since he will marry her again as soon as her divorce becomes final, it is appropriate for him to fund this litigation at the expense of his creditors.

In summary, Mr. Bicsak asks this Court to find he has additional reasonable monthly expenses as follows: (1) student loan payment: $490; (2) 1995 Ford Windstar Van lease: $410; (3) Nations Bank payment: $187; and (4) attorney's fees: $300. Thus, Mr. Bicsak argues that these additional expenses consume $1387 of his $1,539.58 in excess income. Mr. Bicsak offered no credible testimony as to why he should be allowed to reaffirm a debt for $410 per month on a van he has already surrendered. Further, he did not convince this Court that he should be allowed to prefer one creditor over all others by reaffirming the debt to Nations Bank for $187 a month. Finally, Mr. Bicsak failed to persuade this Court that his allowable expenses should include a hypothetical payment of $300 per month for attorney's fees not yet incurred. I, therefore, find that the only allowable post-petition expense in this Chapter 7 case is the $490 per month

payment on his student loan. Assuming the Court were to allow these expenses, however, the UST also questions some voluntary withdrawals noted on debtor's Statement of Earnings and Leave.

Mr. Bicsak's Statement of Earnings and Leave for the pay period 12/22/96 through 1/04/97 indicates the following voluntary deductions: (1) Thrift Savings Plan: $90.43 biweekly; (2) Federal Employees Health Benefits Act: $89.58 biweekly; (3) Savings Account: $100 biweekly; (4) TSP Loan Repay: $21.60 biweekly; (5) TSP Loan Repay: $29.32 biweekly; and (6) Medical Hospital Insurance: $32.78 biweekly.[15] Mr. Bicsak did not fully explain all of these deductions at the hearing. I note that the two deductions for what appear to be health insurance exceed all but the most expensive health insurance offered to federal employees.[16] Mr. Bicsak did testify that he borrowed $3000 from his Thrift Savings Plan in 1992 and an additional $7000 from his Thrift Savings Plan in 1995. He is repaying both of those loans. In addition, he explained that he is contributing $195 per month to the Thrift Savings Plan and $200 a month to a savings account.

The Eighth Circuit holds that the "ability to pay for § 707(b) purposes is measured by evaluating Debtor's financial condition in a hypothetical Chapter 13 proceeding."[17] In a post-trial brief the UST cites several cases that hold that current earnings are part of a Chapter 13 bankruptcy estate, therefore, voluntary postpetition contributions to pension or savings plans must be included in debtor's income for the purpose of calculating disposable income.[18] The Eighth Circuit recently reiterated its position that all income, including exempt income, not reasonably necessary for a debtor's support at the time of the bankruptcy filing must be included in making a disposable income cal-

15. Doc. # 14, Exhibit A.

16. 1997 Federal Employees Almanac 78 *(Don Mace and Eric Yoder eds. 44th ed. 1997).*

17. *Stuart v. Koch (In re Koch),* 109 F.3d 1285, 1288 (8th Cir.1997).

18. Doc. # 18, citing *In re Delnero,* 191 B.R. 539, 542 (Bankr.N.D.N.Y.1996); *In re Cavanaugh,* 175 B.R. 369, 373 n. 3 (Bankr.D.Idaho 1994); *In re Fountain,* 142 B.R. 135, 137 (Bankr.E.D.Va. 1992).

culation.[19] I, therefore, find that the $395 Mr. Bicsak is presently having deducted from his income each month must be included as part of a hypothetical Chapter 13 disposable income calculation in determining whether this case should be dismissed as a substantial abuse.

Ultimately, this substantial abuse inquiry must focus primarily on Mr. Bicsak's ability to pay creditors.[20] Based upon my findings above Mr. Bicsak has the ability to pay his creditors. He has net income of $3,166.58 per month, plus $490 per month that Ms. Sedlacek receives in child support, plus $395 per month which Mr. Bicsak contributes to his retirement and savings account for a total of $4,051.58. He has expenses of $2,117 per month plus a payment on student loans of $490 per month for total expenses of $2607. He, therefore, has disposable income of $1,444.58 per month. Debtor's bankruptcy schedules indicate he has unsecured debt of $37,428. A Chapter 13 plan payment of only $1143.64 per month would pay 100% of Mr. Bicsak's unsecured creditors and the Chapter 13 trustee's fee. To allow Mr. Bicsak to remain in Chapter 7 and obtain a discharge would, therefore, be a substantial abuse pursuant to section 707(b).

For all of the above reasons, I find that this Chapter 7 case should be dismissed for substantial abuse unless debtor moves to convert this case to one under Chapter 13 within twenty days of this Memorandum Opinion.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

**19.** *Stuart v. Koch (In re Koch),* 109 F.3d 1285, 1290 (8th Cir.1997).

**20.** *Koch,* 109 F.3d 1285, 1288–89 (8th Cir.1997).