MANION, Circuit Judge,
dissenting.
I agree with much of the court’s thorough analysis, but I differ on a couple of important points that lead me to a different conclusion. Thus, I respectfully dissent.
Resolving this appeal is problematic because not only do we face issues of first impression in any circuit court, but the debt- or, who prevailed in the bankruptcy court, did not defend his victory in the district court or here. So we have only the appellant’s brief and the lower court opinions to help us decide this appeal.
I fully agree with the court and both lower courts on the burden of proof. The creditor bears the initial burden to show that the debts come within the ambit of 11 U.S.C. § 523(a)(15) but the burden then shifts to the debtor to show that one of the exceptions in subsection (A) or (B) apply. But the burden of proof is only the preliminary, not the primary analysis under subsection (a)(15)(B)’s balancing of harms. As the court correctly notes, this balancing is equitable in nature and precludes any “universal formula.” Opinion p. 888. This is mandated by looking at the “totality of the circumstances.” Thus, the bankruptcy court’s decision as to how those harms balance out should be reviewed only for an abuse of discretion. See In re Jodoin, 209 B.R. 132, 135 (9th Cir. BAP1997) (applying abuse of discretion standard); cf. In re Adams, 200 B.R. 630, 632 (N.D.Ill.1996) (mixing abuse of discretion and clear error). Of course, a court abuses its discretion when it misapprehends the law or relies upon clearly erroneous fact finding. See, e.g., Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).
Under the balancing required by subsection (a)(15)(B), there are three possible outcomes: the creditor’s detriment outweighs the debtor’s benefit; the creditor’s detriment equals the debtor’s benefit; or the creditor’s detriment is less than the debtor’s benefit. The statute’s text makes clear that only in the third case would the debt be dischargeable under (a)(15)(B) because the debtor’s “benefit” must “outweigh” the creditor’s “detrimental consequences.” This determination depends mostly on how the bankruptcy court weighs the facts and circumstances of the case. While the debtor has the burden of proving that the harms balance in his *890 favor, most of the analysis must focus on what the bankruptcy court actually found.
Both of the lower courts stated the appropriate burden of proof, but this court remands because it questions whether they actually applied that burden. I conclude that they did apply the burden they recited, leaving the key question of whether the bankruptcy court abused its discretion in balancing the harms under (a)(15)(B) in favor of Crosswhite. In my view it did not, and therefore I would affirm. Even if one considers Crosswhite’s girlfriend’s contribution — which as I address below I would not— his economic position is still worse than Ginter’s. (For example, Crosswhite is responsible for child support, which is nondischargeable under (a)(5), and an $8,000 property equalization debt that is a lien on his house.) Without additional facts the bankruptcy court could again find that the benefit to Crosswhite from discharging the $5,300 in debts at issue outweighs the detrimental consequences the discharge would cause to Ginter regardless of who has the ultimate burden of proof. Under this statute, who bears the burden of proof tells us who wins ties. Cf. Soto v. Johansen, 137 F.3d 980, 982 (7th Cir.1998). Because of the way the law is written, this is not even a close case, much less a tie.
Back to Crosswhite’s girlfriend. The court concludes that the bankruptcy court erred by not considering the income of his live-in girlfriend as part of the totality of the circumstances that had to be weighed. There is no question that the income of a debtor’s new spouse should be considered just as the income of a creditor’s new spouse should be. But generally a live-in girlfriend (or boyfriend) is not a “spousal equivalent.” Cross-white’s girlfriend can leave him whenever she tires of his “somewhat parasitic existence,” and he would have no claim for continued support; that is not true of Ginter’s new husband. There may be unusual situations in which a non-spouse is a “spousal equivalent.” See In re Bicsak, 207 B.R. 657, 658 (Bankr.W.D.Mo.1997) (involving couple who lived together for five years, were married and had child together but marriage was annulled because wife’s prior marriage had not been properly dissolved). The extent that a non-marriage relationship is marriage-like should be a fact for the bankruptcy court to find, and how that fact weighs into the balance should then be within the bankruptcy court’s discretion. Even giving the girlfriend’s contribution zero weight — as the bankruptcy court did here — would not necessarily be an abuse of discretion without some specific determination that indicates some extra-marital bond (for example, a child, joint title to real estate, or some contractual obligation). Otherwise, the girlfriend could be gone at a moment’s notice with no purse strings attached.
The bankruptcy court’s finding that Cross-white did not satisfy the requirements of § 523(a)(15)(A) is not before us because Crosswhite did not contest this appeal in this court or the district court, much less file a cross-appeal. But given the court’s remand, I question the bankruptcy court’s imputing of potentially earned income to Crosswhite. This appears to be wrong as a matter of law but the court seems to leave open the question of whether under the balancing of harms analysis of § 523(a)(15)(B), the bankruptcy court could or should impute to a debtor income he could earn if he were not engaged in “suboptimal employment.” In applying this subsection, a bankruptcy court should not impute to a debtor income that he could earn if he had better employment. Such a finding would necessarily be speculative, even where, as in this case, there is some evidence to support it. The Fifth Circuit in In re Killough, 900 F.2d 61, 65 (5th Cir.1990), held that the finding that income from overtime should not be included in a Chapter 13 plan was not clearly erroneous — even where overtime had been earned in the past and would likely be available in the future— because the possibility of getting such overtime was not “definite enough.” That reasoning applies with added force to whether the bankruptcy court could impute earnings from a job Crosswhite does not even have. It is certainly possible, even likely, that someone else with comparable skills could obtain a job paying considerably more than Crosswhite earns. But the cold fact is that Crosswhite does not have such a job, which is probably why he is in bankruptcy rather *891 than paying off his debts. Perhaps he works for himself because he cannot work for others; this raises issues of Crosswhite’s personality, disposition, and work ethic, which would have to be put in the record. And because under (a)(15)(B) the bankruptcy court must look into the totality of the circumstances, if Crosswhite’s potential employment is to be considered, so would Ginter’s and her new husband’s potential for more income. Inquiring into what Crosswhite could earn invites multiple layers of speculation. Moreover, most people are engaged in “suboptimal employment” if that term means nothing more than that they could earn more doing something else (or in addition to) what they actually do. Social workers, teachers, and parents who stay home to raise children are good examples of people who could presumably make more money applying their skills and education toward more lucrative ends. A bankruptcy court should not speculate about what a person could earn when the best evidence of that is what he actually does earn. See, e.g., Vaughn v. Illinois State Scholarship Comm’n (In re Vaughn), 151 B.R. 481, 486 (C.D.Ill.1993) (possibility of getting good-paying job in the future cannot be basis of finding no undue hardship under 11 U.S.C. § 523(a)(8)(B) because that possibility applies to every debtor). It would be a different issue if a debtor intentionally sought employment far below his potential simply to go bankrupt and defraud his creditors; such a finding could amount to bad faith or substantial abuse and justify dismissing the bankruptcy petition all together. Compare In re Helmick, 117 B.R. 187, 189 (Bankr.N.D.Pa.1990) (finding bad faith), with In re Martin, 189 B.R. 619, 626-27 (Bankr.E.D.Va.1995) (finding no bad faith).
Finally, it is not necessary to delve into the legislative history of § 523(a)(5) and (a)(15) because — at least to the extent necessary to resolve this appeal — the legislative intent and policy are clear from the text of the statute itself. Nothing in the statute suggests treating the (a)(5) and (a)(15) exceptions differently from any of the many other exceptions to discharge in § 523(a). And the statute clearly expresses the legislative intent to treat creditors less favorably under (a)(15) than under (a)(5) because (a)(5) has no exceptions to non-dischargeability while (a)(15)’s two exceptions benefit the debtor at the expense of the creditor. If anything, the legislative history only confirms what is clear from the text. See Opinion at p. 887 n. 12 (citing House Report stating that support debts— covered by (a)(5) — must take precedence over property settlement debts — covered by (a)(15)). This policy choice is rational: support debts can be considered more important and so it would make no sense to load a debtor up with property settlement debts to the point that he could not pay his support debts. To the extent this policy choice is debatable — and the court notes numerous commentators who disagree with it — the wisdom of that choice is a matter for the political branches.
Certainly the outcome here does not seem fair. Ginter and her new husband, with decent jobs, are easily better off than Cross-white, who is underemployed and partially dependent on a live-in girlfriend who could be gone tomorrow. But given that equation, “discharging [the] debt would result in a benefit to [Crosswhite] that outweighs the detrimental consequences to [Ginter].” While we can question the efficacy of such a law, we cannot rewrite it to make it more equitable. We must apply it as is and let Congress make any needed changes. Also, whether we should, as a general matter, interpret the two divorce-related exceptions as we do the other exceptions — narrowly against the creditors — is not relevant here, where there is no dispute that the two debts are covered by (a)(15). We are not called on to construe any textual ambiguities about what is or is not a covered debt.
I would affirm the lower courts.