**In re Paul H. REGAN and Janet S. Regan, Debtors.**

**No. 01–50268–JWV.**

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

Nov. 19, 2001.

Jeannie M. Bobrink, Kansas City, MO, for Debtors.

Sherri L. Wattenbarger, Kansas City MO, for United States Trustee.

### MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

The United States Trustee ("Trustee") filed a Motion to Dismiss for Substantial Abuse in this Chapter 7 case on August 22, 2001, ("Motion" Doc. # 9) asking the Court to dismiss this case pursuant to the "substantial abuse" provisions of 11 U.S.C. § 707(b). The Debtors, Paul H. Regan and Janet S. Regan ("Debtors"), did not file any response to the Motion, and a very brief hearing was held on October 11, 2001. The Court then took the matter under advisement. The Court has reviewed the Debtors' schedules as requested by the parties, has conducted its own independent research, and is now ready to rule.

Because the Court finds that the Debtors have sufficient disposable income to repay a substantial portion of their debts out of future income, the Trustee's Motion will be granted, but the Court will allow the Debtors 20 days in which to file a motion to convert to Chapter 13, should they desire to do so.

This is a core proceeding under 28 U.S.C § 157(b)(2)(A), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

### FACTUAL BACKGROUND

As stated, the Court held a very brief hearing on the Motion on October 11, 2001. In fact, the parties have given the Court very little to work with in this case. The parties requested that the Court consider the Debtors' schedules in making its ruling, which it has done. The parties also stipulated that the Debtors have reduced their voluntary contributions to their 401(k) plans to $169.40 a month from the $280.49 shown in Schedule I, and that a loan secured by their lawnmower/tractor and requiring a monthly payment of $155.00 would be paid off in January 2002. The Debtors offered no testimony to counter the allegations in the Trustee's Motion.

According to the Debtors' schedules, Paul Regan is a quality control manager earning a gross monthly income of $4,095.87 and Janet Regan is a speech therapist earning a gross monthly income of $2,383.33. Schedule I reflects a combined net monthly income of $4,663.24 and Schedule J reflects $4,724.18 in monthly

expenses, resulting in a budgetary deficit of just $60.94. The Trustee points out, and the schedules and statement of financial affairs reflect, that the Debtors had gross income of $81,267.00 in 2000 and $87,466.00 in 1999. No evidence was offered as to whether the Debtors' income has increased, decreased, or remained the same in 2001. However, some basic calculations indicate that the Debtors' gross income may be decreasing in 2001; according to the monthly income figures shown on Schedule I, the husband's gross annual income would be $49,150.44 and the wife's gross annual income would be $28,599.96, for a total of $77,750.96. No explanation has been offered for such a decrease, if, indeed, there is a decrease. In any event, the Court will make its analysis on the basis of the schedules which have been filed and the stipulations made by the parties.

The Trustee directs his criticisms at five particular areas of expenditures:

(1) A payroll deduction of approximately $280.00 a month for the Debtors' 401(k) plans (which the parties have stipulated have now been reduced to $169.40 a month);

(2) Medical and dental expenses of $290.00 a month;

(3) Transportation costs of $350.00 a month;

(4) Charitable contributions of $100.00 a month; and

(5) An expense of $80.00 a month for tobacco/eye exams/glasses.

### DISCUSSION

■ Section 707(b) of the Bankruptcy Code[1] provides that a court may dismiss a

<hr/>

**1.** b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a

case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions

case filed by a Chapter 7 debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b); *In re Beckel*, 268 B.R. 179, 182 (Bankr.N.D.Iowa 2001). "Substantial abuse" is not defined in the Bankruptcy Code, but in the Eighth Circuit, the primary factor in determining substantial abuse is the debtor's ability to repay his debts out of future income or, put another way, the ability to fund a hypothetical Chapter 13 plan. *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1288 (8th Cir.1997); *In re Walton*, 866 F.2d 981, 985 (8th Cir.1989); *In re Bicsak*, 207 B.R. 657, 659 (Bankr.W.D.Mo.1997). In making this determination, the Court must determine whether the Debtors have excess or disposable income that would be available to fund a Chapter 13 plan.

■ Critical to the Court's analysis in this case is the statutory presumption in favor of granting the debtor a discharge in a Chapter 7 proceeding and, correspondingly, the burden of proof. Section 707(b) of the Code, which permits the filing of motions such as the one before the Court, specifically states:

There shall be a presumption in favor of granting the relief [i.e., discharge] requested by the debtor.

11 U.S.C. § 707(b).

Because a presumption exists in favor of according relief to a debtor, the burden of proof is on the Trustee to show that a debtor's case should be dismissed. *In re Lee*, 162 B.R. 31, 33 (Bankr.N.D.Ga.1993). "Most importantly, however, the United States trustee bears the burden of over-coming the strong presumption in favor of granting the discharge requested by the debtor." *In re Farrell*, 150 B.R. 116, 118 (Bankr.D.N.J.1992).

Keeping these principles in mind, the Trustee's allegations can be examined. The Court finds that the Trustee has met his burden with respect to the first objection raised, but that he has failed to meet his burden with respect to his other allegations.

■ First, the Trustee takes the position that the Debtors should not be allowed to deduct any amount for contributions to their 401(k) plans at their places of employment. The Trustee points out that, at the time of filing, the Debtors were contributing approximately $280.00 a month to their 401(k) plans. The parties have stipulated that, since the filing of the bankruptcy petition, the 401(k) contributions have been reduced to $169.40 a month. However, even this amount should be considered in making the disposable income calculation for purposes of a § 707(b) motion, inasmuch as 11 U.S.C. § 1325(b)(2) defines "disposable income" as income received by the debtor that is not reasonably necessary to support the debtor, the debtor's dependents, or the debtor's business. 11 U.S.C. § 1325(b)(2); *Koch*, 109 F.3d at 1289; *Bicsak*, 207 B.R. at 661–62. Clearly, this $169.40 is not necessary for the support of the Debtors and their children because, with the reduction already made in the 401(k) contributions, the Debtors' income exceeds their reasonable living expenses. Granted, it would be desirable for the Debtors to be able to save additional amounts for their

of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, chari-table contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)). 11 U.S.C. § 707(b).

retirement, but that is not the issue. The issue is whether that money is necessary for the family's support, and clearly it is not. Therefore, it must be included in their disposable income for purposes of this substantial abuse analysis.[2]

Second, the Trustee complains that the Debtors claim medical and dental expenses of $290.00 a month and that those could be reduced to a more reasonable amount. The difficulty is that the Trustee has not introduced any evidence or any guidelines of what a reasonable amount of medical and dental expenses might be for this family of four (the Debtors have two daughters, ages 8 and 12). It appears that the Debtors do obtain at least some medical insurance coverage through Janet Regan's employment, inasmuch as Schedule I shows a deduction of $145.65 a month for insurance. The Debtors have explained at the bottom of Schedule I that their younger daughter has asthma and requires extra medical treatments, that dental insurance is not provided for their daughters, and that the Debtors have prescription costs of more than $125.00 a month. They state that their dental costs average $40.00 a month, but do not spell out what additional costs they incur because of their younger daughter's asthma condition or what their somewhat high prescription drug costs are for. These costs that have been explained by the Debtors total $165.00. It would not be unreasonable to expect that additional costs could be as much as $125.00 a month for extra treatments or medications for the asthmatic daughter and for dental care for the two girls, particularly as they enter the years when braces or other orthodontic devices might be necessary. At the same time, it could well be that the medical and dental expenses could be reduced by some amount each month; the difficulty for the Court is that the Court does not know what that amount might be, in the absence of any evidence to show what it might be.

Third, the Trustee suggests that the Debtors' transportation expenses of $350.00 a month could be reduced to a more reasonable level. On the surface, the Court would be inclined to agree; the amount does seem to be excessive. According to the schedules, the Debtors lease a 1998 Toyota pickup truck ($478.51 a month) and own a 1998 Ford Taurus (payments of $121.95 a month). Considering the fact that these are not old automobiles, repair costs should not be great as a general rule (although the Debtors do note in the schedules that the Taurus has over 76,000 miles on it and thus is considered high-mileage for valuation purposes). It would be safe to assume, however, that regular maintenance and repair costs, plus new tires as required, would be at least $100.00 a month for two vehicles. The question then becomes: Should the Debtors be able to reduce their other transportation costs? The Court has no answer to that because there was no evidence offered to show how far the Debtors must drive each day to and from work, whether they must use their cars in their work, how far they must drive to take their younger daughter to the doctor or how often, or whether there are special requirements for

---

2. The judges in this District have an informal "rule" or practice that permits Chapter 13 debtors to contribute up to 3 per cent of their gross income (or $200.00, whichever is less) each month to an employer-sponsored retirement plan, *so long as that contribution is not objected to.* In this case, 3 per cent of the Debtors' monthly gross income would be about $194.00, so 401(k) contributions of $169.40 a month would be permissible in a Chapter 13 plan, if no objections were filed. However, the Court considers the Trustee's Motion to Dismiss to be, in effect, such an objection for purposes of this analysis. *Bicsak,* 207 B.R. at 661–62.

use of their vehicles, for example. If the Debtors drive 50 miles to and from work each day, that is one thing; if they must drive 150 miles each day, that is quite another. Unfortunately, the Court was presented with no evidence on these questions, and will not engage in surmise and speculation to say what is or is not excessive and unreasonable under these circumstances. The $350.00 a month claimed by the Debtors for transportation expenses will not be found to be *per se* unreasonable.

■ Next, the Trustee challenges the Debtors' monthly expense of $100.00 for charitable contributions. Once again, there is no evidence to demonstrate that such contributions would be unreasonable. Such a contribution would be less than 1 per cent of the Debtors' net monthly income. Additionally, Section 707(b) expressly prohibits the Court, in determining whether to dismiss a case for substantial abuse, from considering qualified (i.e., legitimate) charitable contributions.[3] In view of this statutory prohibition, the Court cannot find that the $100.00 a month in charitable contributions would be available to fund a Chapter 13 plan or that it is grounds for dismissal for substantial abuse. Moreover, the Court does not consider the amount unreasonable in any event.

■ Finally, the Trustee questions the Debtors' expense of $80.00 a month for tobacco/eye exams/glasses. This point can be readily disposed of. There is no evidence to show that this expense is unreasonable and could be reduced. Annual eye examinations and required glasses or contact lenses can cost several hundred dollars a person each year, so $40.00 a month for four people does not seem unreasonable. While the Court does not encourage the use of tobacco, an expense of $40.00 a month for tobacco—the cost of less than two cartons of cigarettes a month—does not seem excessive or unreasonable.

The Court has examined the other expenses set out in the Debtors' schedules and does not find any of them to be excessive or unreasonable. Granted, some expenses could surely be reduced, but that is true for many people. Obviously, the Debtors' living expenses are greater than the living expenses would be for a family with income of only $40,000.00 a year, but that does not mean that the expenses are *per se* unreasonable.

■ In summary, then, it appears that the Debtors have approximately $374.55 a month in disposable income that could be paid into a Chapter 13 plan. They have $280.49 available in 401(k) contributions that have been disallowed, plus $155.00 available from the completed lawn tractor payments, minus the $60.94 budget deficit shown in their Schedule J. If the Debtors were to pay $374.55 a month for 36 months into a Chapter 13 plan, they would pay $13,483.80 over the life of the plan. After deduction of the Trustee's fee (approximately 10 per cent), there would be approximately $12,000.00 available to the unsecured creditors. The Debtors have scheduled primarily consumer debt totaling some $41,430.00. Therefore, such a plan would result in payments to creditors of approximately 29 per cent of the total unsecured debt. If the plan were to be extended to 60 months, as permitted (but not required) under the Bankruptcy Code,

---

**3.** In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)). 11 U.S.C. § 707(b).

the payments would total $22,473.00 and result in payment of almost 50 per cent of the unsecured debt. In either case, this would represent a substantial payment to the unsecured creditors.[4]

Although the courts seem to have emphasized the percentage of debt that could be repaid in making their substantial abuse analyses, neither Congress nor the courts have established a bright line test to be applied in these cases. *In re Praleikas*, 248 B.R. 140, 145 (Bankr.W.D.Mo. 2000). Such a test would certainly make this Court's job much easier. In *Walton*, the Eighth Circuit, while emphasizing the ability to repay, made it clear that the court may consider other factors, such as the petitioners' good faith and their unique hardships. *Walton*, 866 F.2d at 983.

 As the Trustee points out, Chapter 7 is intended to give "the truly needy a fresh start and not to give those who can afford to meet their obligations a head start," and Chapter 7 debtors are obligated to "demonstrate a sincere effort to 'tighten their belts'" so as to avoid the need for bankruptcy relief in the future. *In re Buntin*, 161 B.R. 466, 468 (Bankr. W.D.Mo.1993). In this case, the Court is left with the firm conviction that the Debtors have not demonstrated that they have tightened their belts or that they are truly needy. To the contrary, the Court believes that the Debtors, with an income in the range of $80,000.00 a year, have the ability to repay a substantial portion—at least 29 per cent—of their unsecured debts through a Chapter 13 plan, and that their Chapter 7 petition has not, at least in this respect, been filed in good faith. The Trustee has overcome the presumption that the Debtors are entitled to the relief requested, and has demonstrated that,

when all factors are considered, the Debtors have an ability to repay a substantial portion of their debts. The Debtors have not produced evidence of any unique hardships to convince the Court that they should be allowed to proceed in Chapter 7.

Accordingly, the Court will dismiss these Chapter 7 proceedings unless the Debtors desire to convert this case to a case under Chapter 13 of the Bankruptcy Code. The Court will allow the Debtors 20 days in which to file a motion to convert. If no such motion is filed within 20 days, this order will become final.

Therefore, it is

ORDERED that the Trustee's Motion to Dismiss for Substantial Abuse (Doc. # 9) be and is hereby GRANTED, that the Debtors be and are hereby granted 20 days in which to file a motion to convert to Chapter 13 if they desire to do so, and that this Order shall become final after the expiration of 20 days if a motion to convert is not filed.

---

4. It could well be that additional disposable income would be available for funding a Chapter 13 plan, if the Chapter 13 Trustee determines that the Debtors' medical and dental expenses and transportation expenses are excessive.