**In re Christopher AUSTIN, Debtor.**

No. 02–18291.

United States Bankruptcy Court,
E.D. Tennessee,
Southern Division.

June 13, 2003.

484

Mark T. Young & Associates, Mark T. Young, Hixson, TN, for the Debtor.

Richard Clippard, United States Trustee, Kimberly C. Swafford, Chattanooga, TN, for the Trustee.

## *MEMORANDUM*

JOHN C. COOK, Chief Judge.

This case is before the court on the United States Trustee's motion to dismiss pursuant to Section 707(b) of the Bankruptcy Code. Having considered the proof and arguments of the parties, the court now reports its findings of fact and conclusions of law pursuant to Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure.

### I.

The debtor is employed as a civil engineer with the Tennessee Valley Authority and has been so employed for the last 13 years. His current annual salary is $78,500. He is 36 years old and single. The debtor lives in a home valued at $110,000 and pays monthly mortgage payments in the amount of $1,100. He owns a 2000 Chrysler 300 M automobile and pays $598.19 a month on the loan he took out to purchase it. He owes about $16,000 on this loan.

The debtor has a net monthly income of $3,804.29. Deducted from his income every month is the sum of $763.82 for contributions to a 401(k) retirement plan and the repayment of a loan made by the plan. The debtor testified that roughly half of this amount represents new contributions to his retirement plan (6% of his salary) and the other half represents repayments of a loan the debtor received from the plan. The current balance of the debtor's 401(k) plan is approximately $40,000. The debtor also holds a vested interest in a separate TVA pension plan that is provided by TVA to employees as an additional benefit.

The debtor listed monthly expenses of $3,750. Included in those expenses were the following items:

Cable and Internet Service-$70

Home Maintenance-$150

Food—$550

Household Supplies-$80

Transportation (not including car payments)-$232

Cell phone/pager-$50

Vacation and travel-$100

Birthdays and Christmas-$60.

The debtor filed this bankruptcy case to discharge mainly credit card debt totaling $64,666 that had accumulated over a number of years. The U.S. Trustee argues that granting discharge relief in this case would be a substantial abuse of the provisions of Chapter 7 because the debtor can easily afford to pay a large portion of his debt in a Chapter 13 plan.

### II.

The U.S. Trustee's motion is based on the provisions of Section 707(b) of the Bankruptcy Code, which provides as follows:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the

request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

There is no dispute that the debtor is an individual or that his debts are primarily consumer debts, and the debtor no longer makes any charitable contributions. Accordingly, the issue before the court is whether this case constitutes a "substantial abuse" of Chapter 7 of the Bankruptcy Code.

■■■ The Sixth Circuit has explained the meaning of that term:

Those courts which have reviewed the legislative history, have generally concluded that, in seeking to curb "substantial abuse," Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor. In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. Substantial abuse can be predicated upon either lack of honesty or want of need.

*In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989) (citations omitted). The court went on to list some of the factors to be considered in evaluating a debtor's honesty (which the U.S. Trustee does not question in this case) and some of the factors to be considered in evaluating a debtor's need for Chapter 7 relief. In the latter regard, the "totality of the circumstances" include (a) the debtor's "ability to repay his debts out of future earnings," (b) "whether the debtor enjoys a stable source of future income," (c) whether the debtor is "eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code," (d) "whether there are state remedies with the potential to ease [the debtor's] financial predicament," (e) "the degree of relief obtainable through private negotiations," and (f) whether the debtor's "expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *Id.* at 126–27.

■■■ *Krohn* makes it very clear that the debtor's ability to repay his debts may *alone* be sufficient to support a finding of substantial abuse:

Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. *That factor alone may be sufficient to warrant dismissal.* For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease.

*Id.* at 126 (emphasis added); *accord, In re Laury–Norvell*, 157 B.R. 14, 16 (Bankr. N.D.Ohio 1993). The debtor, however, relies on *In re Browne*, 253 B.R. 854 (Bankr. N.D.Ohio 2000), for the proposition that

*Krohn* does not permit a finding of substantial abuse based solely on the debtor's ability to pay debts. *Browne* really holds that it is improper to use the ability-to-pay test as the "sole determinant" of the issue of substantial abuse. *Id.* at 856. The case turned on the question of whether the debtor's wife's income (they had recently married) should be considered in determining the debtor's ability to pay his debts. However, *Browne* does quote from an opinion by the same author, *In re Marshalek*, 158 B.R. 704 (Bankr.N.D.Ohio 1993), in which the court found that the rule in the Sixth Circuit, as established by *Krohn*, is that ability to pay cannot be enough by itself to warrant dismissal under § 707(b):

> Some courts have narrowly used § 707(b) to deny a fresh start to a debtor who has an ability to repay its debts from future earnings in arriving at a finding of substantial abuse. Other courts have considered both § 707(b) factors, primarily consumer debts and substantial abuse, before denying a debtor a fresh start through Chapter 7 relief. The latter group of courts recognize that § 707(b) does not expressly incorporate an ability-to-pay test. As such, an ability to pay, without more, is an insufficient basis to deny Chapter 7 relief. *See, In re Kelly*, 841 F.2d 908 (9th Cir.1988), *contra, In re Green*, 934 F.2d 568 (4th Cir.1991); *In re Krohn*, 886 F.2d 123 (6th Cir.1989).

*Id.*, at 708. Having thus indicated that *Krohn* is *contrary* to the Ninth Circuit's position that ability to pay, without more, cannot result in dismissal, the court goes on, confusingly, to conclude: "In this Circuit, the latter position has been adopted. That is, an ability to pay, without more, is an insufficient basis to dismiss a case under § 707(b). *See, In re Krohn*, 886 F.2d 123 (6th Cir.1989)." *Id.*

This court believes that *Krohn* clearly states that the ability of a debtor to pay his debts may alone warrant dismissal of his Chapter 7 case for substantial abuse, though that result is not necessarily required. If *Browne* and *Marshalek* hold otherwise, this court cannot follow them. Finally, to the extent that the debtor contends that bad faith, inappropriate conduct, or dishonesty must be shown in addition to a lack of need, *Browne* does not so hold and *Krohn* explicitly permits dismissal under § 707(b) where there is *either* a lack of honesty *or* a lack of need. *Krohn*, 886 F.2d at 126; *accord, Wilson v. United States Trustee (In re Wilson)*, 125 B.R. 742, 746 (W.D.Mich.1990).

### III.

Based on his present spending habits, the debtor does not have a substantial ability to repay his debts. However, the debtor "enjoys a stable source of future income" and is "eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code." 11 U.S.C. § 109(e). Moreover, his "expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." In other words, the evidence leaves no doubt that the debtor could, with some belt-tightening, have a substantial ability to repay a large part of his indebtedness.

First, it appears that in this circuit funds contributed to savings or pension plans constitute "disposable income" that must be paid to creditors under a Chapter 13 plan that proposes less than a 100% payout to unsecured creditors. In *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775, 777 (6th Cir.1995), the court held that repayments on a loan obtained from a retirement account represent disposable income that is not necessary for the maintenance or support of the debtors. Because repayments on loans from retirement plans are, in effect, retirement plan contributions, it is clear that the Sixth

Circuit would likewise hold that such contributions also constitute disposable income that must be committed to a Chapter 13 plan. *In re Fulton,* 211 B.R. 247, 250–51 n. 1 (Bankr.S.D.Ohio 1997) (extending *Harshbarger* to pension plan contributions); *see Anes v. Dehart (In re Anes),* 195 F.3d 177, 180–81 (3d Cir.1999) (holding voluntary retirement plan contributions are not necessary for maintenance or support). Because funds that would otherwise be contributed to a retirement plan must be used to pay creditors under a Chapter 13 plan, such funds should be considered available to pay creditors for the purpose of the "substantial abuse" analysis. *In re Regan,* 269 B.R. 693, 696–97 (Bankr.W.D.Mo.2001); *In re Cox,* 249 B.R. 29, 32 (Bankr.N.D.Fla.2000); *In re Cohen,* 246 B.R. 658, 665–67 (Bankr. D.Colo.2000); *In re Heffernan,* 242 B.R. 812, 818 (Bankr.D.Conn.1999); *In re Rodriguez,* 228 B.R. 601, 604 (Bankr.W.D.Va. 1999); *In re Watkins,* 216 B.R. 394, 396 (Bankr.W.D.Tex.1997); *In re Bicsak,* 207 B.R. 657, 661–62 (Bankr.W.D.Mo.1997).[1] Indeed, at least one court within the Sixth Circuit has applied *Harshbarger* in the Section 707(b) context. *In re Blum,* 255 B.R. 9, 15–16 n. 10 (Bankr.S.D.Ohio 2000); *see also In re Summer,* 255 B.R. 555, 559, 563–64 (Bankr.S.D.Ohio 2000) (citing *Harshbarger* and granting motion to dismiss, despite "no hint of dishonesty or lack of full disclosure," partly because of the continuation of deductions for pension plan contributions and loan repayments).

When the retirement plan contributions and loan repayments are eliminated from the amended Schedule I, the result is disposable income of $818.11 per month.[2] Assuming a 36–month plan,[3] the total that the debtor could be required to pay to unsecured creditors in a Chapter 13 case would be $29,451.96, a 46% dividend on unsecured claims.

Moreover, several of the debtor's other monthly expenditures seem quite large for someone who possesses the debt burden that the debtor has and who should have been engaged in some belt-tightening to cope with that debt burden. These monthly expenses include a food expense of $550 per month for one person (suggesting frequent restaurant patronage); a combined expense of $130 per month for cell phone and telephone service; a $70–per–month expenditure for both cable TV and Internet service; a transportation expense of $232 (in addition to $598 in car payments) for fuel, maintenance, and repairs for a vehicle that is only three years old; and the expenditure of $3,000 per year for recreation, vacation, and travel.

Considering the totality of circumstances in this case, namely the debtor's age, his salary, his job stability, the debt-

---

**1.** Other courts, without discussion, consider funds used to make retirement plan contributions or retirement plan loan repayments as available to pay creditors for Section 707(b) purposes. *E.g., In re May,* 261 B.R. 770, 772 (Bankr.M.D.Fla.2001); *In re Norris,* 225 B.R. 329, 333 (Bankr.E.D.Va.1998); *In re Lampkin,* 221 B.R. 390, 391–92 (Bankr.W.D.Tex. 1998); *In re Carlton,* 211 B.R. 468, 479 (Bankr.W.D.N.Y.), *aff'd sub nom. Kornfield v. Schwartz,* 214 B.R. 705 (W.D.N.Y.1997), *aff'd,* 164 F.3d 778 (2d Cir.1999).

**2.** This figure disregards the tax consequences of terminating payments on the 401(k) loan. "[S]uch penalties are not sufficient to make

these payments 'mandatory' and therefore excluded from the calculation of disposable income." *In re Estes,* 254 B.R. 261, 265–66 (Bankr.D.Idaho 2000); *accord, In re Heffernan,* 242 B.R. 812, 818 n. 2 (Bankr.D.Conn. 1999); *In re Johnson,* 241 B.R. 394, 401, 401 n. 12 (Bankr.E.D.Tex.1999); *In re Fulton,* 211 B.R. 247, 258 (Bankr.S.D.Ohio 1997).

**3.** The court makes this assumption because all disposable income must be paid to creditors under a Chapter 13 plan for the first three years of the case, unless it provides for the payment of all unsecured claims in full. 11 U.S.C. § 1325(b)(1)(B).

or's lack of dependents, his 401(k) payments, his pensions, his eligibility for Chapter 13, and his expense items, the court believes that the debtor could pay a large portion of his consumer debt with relative ease from future income, and that permitting a Chapter 7 discharge of all of the debtor's debt would represent a substantial abuse of Chapter 7 of the Bankruptcy Code.[4]

## IV.

Accordingly, the court will enter a separate order granting the United States Trustee's motion to dismiss this case, but will afford the debtor a reasonable opportunity to convert the case to a case under Chapter 13 of the Bankruptcy Code.

---

4. This analysis disregards the fact that the debtor could withdraw all or part of the $40,000 balance in his 401(k) account to pay creditors. *See Kornfield v. Schwartz (In re Kornfield)*, 164 F.3d 778, 784 (2d Cir.1999) ("Even though the debtors' pension plan may be exempt from creditors, the court was within its discretion in noting its existence in evaluating the totality of their circumstances.").