**In re Paul W. BUNTIN and Deanna R. Buntin, Debtors.**

**Bankruptcy No. 93–41539.**

United States Bankruptcy Court, W.D. Missouri.

Oct. 29, 1993.

---

Robert Lantz, U.S. Trustee Office, Kansas City, MO, for movant.

Donald Woodell, Independence, MO, for debtors.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The United States Trustee moved this Court to dismiss debtors' Chapter 7 bankruptcy case for substantial abuse. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that debtors have the ability to repay a significant portion of their debts in a Chapter 13 bankruptcy. Therefore, I will dismiss this Chapter 7 for substantial abuse, unless the debtors convert the case to Chapter 13.

### FACTUAL BACKGROUND

Both debtors are employed at the present time. Mr. Buntin has worked at Armco Steel for the past twenty years, and Mrs. Buntin at Carmean, Inc. for sixteen years.

The debtors were married five years ago. Each has adult children by previous marriages. Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("Code") on May 21, 1993.

According to the Summary of Schedules filed with their petition, debtors have total assets of $4,588.00 and total liabilities of $32,550.20. Of these liabilities, $29,188.38 represents general unsecured debt. Debtors' net income is $2,846.71.[1] See Debtors' Amended Schedule I.

Debtors' net monthly expenditures are $2,870.55. See Debtors' Amended Schedule J. That is $33.84 more than monthly income. At the time of the original filing, debtors had listed expenses of $3,455.33. See Debtors' Schedule J. Mrs. Buntin testified that at the time the original schedules were filed she and Mr. Buntin estimated their actual expenses and that the amendment is based on actual checking records and receipts. In addition, the original Schedule J included a payment of $1,249.66, which represented the total of minimum monthly payments debtors were making to unsecured creditors. Since a bankruptcy discharge would wipe out those debts, those payments were deleted from the amendment.

### DISCUSSION

The Code provides that:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b). It is undisputed that the debts at issue here are primarily consumer debts.

---

1. When this bankruptcy petition was filed debtors listed net income of $3,322.86 See Debtors' Schedules I. Debtors' amended schedules indicate that Mr. Buntin had received a one time annual profit sharing payment on February 15, 1993, in the gross amount of $3,560.75 and the net amount of $2,387.48. This payment distorted his average monthly wage when the bankruptcy was filed.

The term "substantial abuse" is not defined by the Code. *In re Grant,* 51 B.R. 385, 392 (Bankr.N.D.Ohio 1955). However, case law in the Eighth Circuit provides that filing for Chapter 7 relief when debtors have the ability to repay a significant portion of their pre-petition consumer debts can constitute substantial abuse. *See United States Trustee v. Harris (In re Harris),* 960 F.2d 74, 77 (8th Cir.1992); *In re Walton,* 866 F.2d 981, 985 (8th Cir.1989). In *Walton,* the Eighth Circuit agreed with the lower court that substantial abuse could be found where debtors had sufficient disposable income to repay more than two-thirds of their unsecured debt over three years. *Walton* at 985. Thus, the Eighth Circuit permitted the use of a mathematical test as one factor in 707(b) cases, holding that while "the statute does not mandate a future income test, we are satisfied that it does not preclude the consideration of future income in giving meaning to the 'substantial abuse' standard." *Id.* at 984. However, the Circuit Court did not limit § 707(b) to just a mathematical formula. While the debtors' future ability to repay is perhaps the most basic factor to be considered, "[c]ertainly the court may take the petitioner's good faith and unique hardships into consideration under section 707(b)." *Id.* at 983. However, *Walton* and *Harris* both establish that debtors' ability to repay is the starting point in any 707(b) case.

From the amended schedules it appears that debtors expenses exceed their income by $23.84. However, I am unwilling to allow all of the expenses on the amended Schedule J as being reasonable and necessary. Chapter 7 liquidation is intended to give "the truly needy a fresh start, not to give those who can afford to meet their obligations a head start." *In re Grant,* 51 B.R. 385, 394 (Bankr. N.D.Ohio 1985). There is also an implied condition that debtors who avail themselves of Chapter 7 relief demonstrate a sincere effort to "tighten their belts" to prevent the need for additional relief several years after the discharge. *Id.* at 396. Neither Mrs. Buntin's testimony nor amended schedule J convinces me these debtors have or intend to tighten their belts. For example, Mrs. Buntin testified that they used $800.00 of Mr. Buntin's profit sharing payment to take a vacation in Las Vegas in February, just three months before filing for bankruptcy relief, and at a time when they were behind on their obligations.

Schedule J reflects $100.00 per month as a vacation allowance. Debtors also allow for cable television at $34.00 a month. In addition, debtors list recreation expenses of $275.00 and tobacco expenses of $262.50 per month. Mrs. Buntin testified that she smokes three packs of cigarettes a day and that Mr. Buntin smokes two packs of cigarettes a day. They pay $1.60 per pack. While I will not find that debtors must stop smoking in order to avail themselves of bankruptcy relief, I will find that an expense in excess of a pack of cigarettes per day per debtor is not necessary or reasonable. That comes to $96.00 per month, a savings of $166.50. I also find that recreation expenses of $275.00 per month, for two adults in this situation, is excessive. Some of this money is spent on such activities as golf and bingo, which would be fine if they also paid their bills. I find that $100.00 per month at most is reasonable and necessary for these debtors. By my calculations these belt tightening actions would result in an additional $475.50 per month being made available for creditors.

Additionally, amended schedule J provides for an increase in debtors' rent allowance from $350.00 a month to $550.00 a month. Mrs. Buntin stated that debtors have attempted to purchase a home instead of continuing to live in their two bedroom apartment, but they have been unable to qualify for a loan because of their other debts. With a Chapter 7 discharge in hand, they intend to upgrade their housing as soon as possible, and anticipate an increased expense of $200.00 per month. I find that Chapter 7 relief is not intended to allow debtors to "upgrade their current low standard of housing," Amended Schedule J, at the expense of their creditors. As a result, this additional $200.00 is not allowed as a reasonable and necessary expense.

Therefore, debtors could reduce their stated expenses by $675.50 per month. Since their listed expenses exceed monthly income

by $33.84, they should have a total of $641.66 available per month to service unsecured debt. Indeed, by their own statement, they were paying $1,249.66 per month to unsecured creditors prior to filing this case. A payment of $641.66 per month for thirty-six months would repay 70.96% of debtors' unsecured debt. Debtors have not demonstrated any unique hardships or other reasons why they should not be required to use excess income to repay a significant portion of their debts. I therefore find that debtors have the ability to fund a plan under Chapter 13 of the Code which would pay a significant portion of their pre-petition debt. As a result, this case should be dismissed pursuant to 11 U.S.C. § 707(b), unless debtors convert to Chapter 13.[2] I will stay the dismissal for twenty days to give debtors that opportunity to convert.

**2.** Debtors list total food expenses of $868.00, including $433.00 for groceries, $260.00 for food consumed out, and $175.00 for food consumed at work. While I believe debtors have spent this much money for food in the past, it appears that $260.00 for eating out is excessive for two people. Assuming debtors eat out two times a week at a cost of $10.00 per meal per person, they would require an allowance of $160.00, or savings of $100.00 per month. I will not, however, use these food savings for purposes of the computations made here.