**In re Melinda Ann SCOBEE, Debtor.**

**No. 01–60910.**

United States Bankruptcy Court,
W.D. Missouri,
Southern Division.

Nov. 8, 2001.

Jerry L. Phillips, Office of the U.S. Trustee, Kansas City, MO, for Movant.

David Schroeder, David Schroeder Law Offices, PC, Springfield, MO, for Debtor.

---

1. UST's Ex. # 3.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

The United States Trustee (the UST) filed a motion to dismiss this bankruptcy petition as a substantial abuse of the provisions of Chapter 7. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will grant the UST's motion to dismiss unless debtor moves to convert to Chapter 13 within 20 days of the entry of this Memorandum Opinion.

## FACTUAL BACKGROUND

Debtor Melinda Scobee is a single parent with a 23 year old daughter who attends college on a partial scholarship. She is employed by McKesson HBOC as a Regional Service Advisor, and has been so employed for the past 8 years. On April 27, 2001, Ms. Scobee filed this Chapter 7 bankruptcy petition. Her bankruptcy schedules reflect general unsecured consumer debt in the amount of $70,559.62. At the time of filing she scheduled her gross monthly income in the amount of $5,976.34 and her net monthly income in the amount of $3,694.58. For the year 2000 Ms. Scobee also received an income tax refund in the amount of $989.00.[1] In her deductions from gross income she included a deduction to her 401(k) plan in the amount of $231.06. Ms. Scobee scheduled monthly expenses in the amount of $3,479.47, therefore, she scheduled dispos-

able income in the amount of $215.11. She included in her monthly expenses health and beauty items in the amount of $175.00, tuition and living expenses for her daughter in the amount of $509.50, housecleaning services in the amount of $135.00, and medical expenses in the amount of $300.00. The UST filed a motion to dismiss pursuant to section 707(b) of the Bankruptcy Code (the Code), and on October 24, 2001, this Court conducted a hearing at which Ms. Scobee testified. The issue presented here is whether Ms. Scobee has enough disposable income to fund a Chapter 13 plan and pay a substantial amount of her general unsecured debt. If so, this Court must grant the UST's motion to dismiss the case as a substantial abuse of Chapter 7. In Order to make that determination I must analyze both Ms. Scobee's income and the reasonableness of her monthly living expenses.

### DISCUSSION

The Court may dismiss a Chapter 7 case if it determines, after a properly noticed hearing, that allowing the debtor to discharge all of his or her debts would be an abuse of the provisions of Chapter 7:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the

provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.[2]

It is undisputed that the debts at issue here are primarily consumer debts.

 The term "substantial abuse" is not defined by the Bankruptcy Code.[3] However, case law in the Eighth Circuit provides that filing for Chapter 7 relief when debtors have the ability to repay a significant portion of their pre-petition consumer debts can constitute substantial abuse.[4] In *In re Walton*, the Eighth Circuit agreed with the lower court that substantial abuse could be found where debtors had sufficient disposable income to repay more than two-thirds of their unsecured debt over three years.[5] Thus, the Eighth Circuit permitted the use of a mathematical test as one factor in 707(b) cases, holding that while "the statute does not mandate a future income test, we are satisfied that it does not preclude the consideration of future income in giving meaning to the 'substantial abuse' standard."[6] But, the Circuit Court did not limit a section 707(b) analysis to only a mathematical formula. The Court found that while the debtors' future ability to repay is perhaps the most basic factor to be considered, "[c]ertainly the court may take the petitioner's good faith and unique hardships into consideration under section 707(b)."[7] *Walton* and *Harris* do, however, establish that debtors' ability to repay is the starting point in any 707(b) case. And a substantial ability to repay is enough to warrant dismiss-

2. 11 U.S.C. § 707(b).

3. *In re Buntin*, 161 B.R. 466, 468 (Bankr. W.D.Mo.1993); *In re Grant*, 51 B.R. 385, 392 (Bankr.N.D.Ohio 1985).

4. *See United States Trustee v. Harris (In re Harris)*, 960 F.2d 74, 77 (8th Cir.1992); *In re Walton*, 866 F.2d 981, 985 (8th Cir.1989).

5. *Walton* at 985.

6. *Id.* at 984.

7. *Id.* at 983.

al of the Chapter 7 petition.[8] Moreover, the ability to repay must be determined after debtors have demonstrated a sincere effort to "tighten their belts."[9] Or, if the Court finds that debtors have not demonstrated such a sincere effort, the Court will determine whether the expenses as scheduled are both reasonable and necessary.[10]

■ Before analyzing Ms. Scobee's expenses, I will look to her net income. According to her schedules, her net monthly income is $3,694.00, after deducting a voluntary contribution to her 401(k) plan in the amount of $231.00. In the Eighth Circuit, a disposable income calculation includes voluntary contributions to pension or profit sharing plans.[11] In this district, the Chapter 13 trustee does not object to the confirmation of a Chapter 13 plan that provides for a contribution to a pension or profit sharing plan of no more than 3 percent of gross income or $200.00, whichever is less. Thus, had Ms. Scobee filed a Chapter 13 bankruptcy petition, she would have had to decrease her contribution to her 401(k) plan by $31.00. In addition, in making an ability to pay analysis, Ms. Scobee's net income should be increased by the amount of her income tax refund, as that refund results from over withholding on behalf of the Internal Revenue Service. Her 2000 tax refund totaled $989.00, or $82.42 per month. I will, therefore, find, for purposes of an ability to pay analysis, that Ms. Scobee's net monthly income is $3,807.42.[12]

The UST questioned several of Ms. Scobee's expenses. She testified that she was involved in an automobile accident in 1992 that resulted in a neck injury. Since that time, she said she has required medication, physical therapy, and reflexology to control the symptoms. She, therefore, stated that she scheduled $300.00 per month for medical expenses over and above what is covered by her health insurance. The UST, however, introduced Ms. Scobee's Quicken records for the 12 months prior to the filing of her bankruptcy petition. Those records indicate that she spent a total of $3,040.52 for the above items, including certain food items.[13] Her actual expenses are, therefore, $253.38 per month leaving an additional $46.62 in disposable income available to pay her other creditors.

Ms. Scobee also scheduled $175.00 in health and beauty items. She testified that her job requires her to work with executive officers, and that she must have a favorable appearance in order to perform effectively. That may well be, but again her Quicken records indicate that she spends approximately $60.00 per month for hair color and approximately $20.00 every two weeks for a manicure.[14] Those same records also indicate that Ms. Scobee spends additional sums for other beauty products, but her testimony was only that her job required her to color her hair and maintain her nails in an acceptable condition. I will, therefore, find that $100.00

---

8. *Stuart v. Koch (In re Koch),* 109 F.3d 1285, 1288 (8th Cir.1997).

9. *In re Buntin,* 161 B.R. 466, 468 (Bankr. W.D.Mo.1993).

10. *Id.*

11. *In re Bicsak,* 207 B.R. 657, 661 (Bankr. W.D.Mo.1997) (citing *Stuart v. Koch (In re Koch* ), 109 F.3d 1285, 1290 (8th Cir.1997)).

12. $3,694.00 plus $31.00 plus $82.42 equals $3,807.42.

13. UST's Ex. # 5.

14. *Id.*

per month is a reasonable and necessary expense for health and beauty products for a professional woman. For purposes of this ability to pay analysis, I will reduce Ms. Scobee's expenses by $75.00 for that category.

■ Ms. Scobee testified that she subsidizes her 23 year-old daughter, who attends college, by paying a portion of her car payment in the amount of $137.50 per month, a portion of her living expenses in the amount of $122.00 per month, and a portion of her tuition in the amount of $250.00 per month. That subsidy totals $509.50. Ms. Scobee also scheduled $135.00 for housecleaning help, because she claims her neck injury prevents her from performing that task for herself. I will not find that Ms. Scobee should not assist her daughter with her education, despite the fact that Ms. Scobee has no legal obligation to do so. I will, however, find that she must reduce the subsidy by the amount of the housecleaning service, or eliminate the housecleaning service and look to her daughter for that assistance. I find that an expense for both is not reasonable or necessary in light of the fact that she is attempting to discharge $70,559.62 in general unsecured debt. Her expenses must, thus, be reduced by an additional $135.00.

■ To summarize, Ms. Scobee's net monthly income, as adjusted by this Memorandum Opinion, is $3,807.42. Her allowable expenses, as adjusted for reasonableness and necessity, are $3,222.85,[15] leaving disposable income with which to fund a Chapter 13 plan in the amount of $584.57. A monthly payment of $584.57 for 36 months would result in a total payment to the Chapter 13 trustee of $21,044.52. Even after deducting the Chapter 13 trustee's fee of $2,104.45, Ms. Scobee would be able to pay her unsecured creditors the sum of $18,940.07, or approximately 27 percent of the debt. This Court has previously found that a repayment of 20 percent of unsecured debt may be a substantial repayment.[16] The determination of Ms. Scobee's ability to fund a Chapter 13 plan is based on a consideration of her ability to make a substantial effort to repay her debts, not just the percentage of debt she can repay. I find that, with some effort on her part, Ms. Scobee has sufficient disposable income to repay a significant portion of her debt. I will, therefore, grant the UST's motion to dismiss this Chapter 7 case unless Ms. Scobee files a motion to convert to Chapter 13 within 20 days of this Opinion.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

15. Scheduled expenses of $3,479.47 minus $46.62 (disallowed medical expenses) minus $75.00 (disallowed health and beauty expenses) minus $135.00 (disallowed housecleaning expenses).

16. *See In re Praleikas,* 248 B.R. 140, 145 (Bankr.W.D.Mo.2000).