An Order in accordance with this Memorandum Opinion will be entered this date.

**In re James Elliott SMITH and Joyce Ann Smith, Debtors.**

No. 01–50225–JWV.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Nov. 19, 2001.

reviewed the Debtors' schedules as requested by the Trustee, has reviewed the evidence adduced at the hearing, has conducted its own independent research, and is now ready to rule.

Because the Court finds that the Debtors have sufficient disposable income to repay a substantial portion of their debts out of future income, the Trustee's Motion will be granted, but the Court will allow the Debtors 20 days in which to file a motion to convert to Chapter 13, should they desire to do so.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

William E. Erdrich, St. Joseph, MO, for Debtors.

Sherri L. Wattenbarger, Kansas City, MO, for United States Trustee.

## MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

The United States Trustee ("Trustee") filed a Motion to Dismiss for Substantial Abuse in this Chapter 7 case on August 3, 2001, ("Motion" Doc. # 11) asking the Court to dismiss this case pursuant to the "substantial abuse" provisions of 11 U.S.C. § 707(b). The Debtors, James Elliott Smith and Joyce Ann Smith ("Debtors"), filed a response objecting to the relief requested in the Motion, and a hearing was held on October 11, 2001, in St. Joseph, Missouri. The Court then took the matter under advisement. The Court has

## FACTUAL BACKGROUND

The Debtors filed their voluntary Chapter 7 petition on March 26, 2001. James Smith is a cable splicer for Sprint and Joyce Smith works as a secretary at Northwest Missouri State University in Maryville. They have a 20–year–old daughter who is a college student and lives at home. According to their amended bankruptcy schedules, the Debtors have a net monthly income of $3,461.07 and expenses of $3,367.44, for a monthly surplus of $93.63. However, the day before the hearing, Joyce Smith was advised that her work hours during the school year would likely be reduced by eight hours a week, to 32 hours, because of a lower University enrollment in the current year. This information was confirmed in a letter to Ms. Smith from the chairperson of the University's computer science/information systems office, received subsequent to the

688

hearing.[1] A postscript to the letter stated that this reduction in hours would reduce Ms Smith's monthly gross income by $252.80. It appears that required taxes and other payments are approximately 20 percent of Ms. Smith's gross wages; therefore, this reduction in pay should result in a reduction of approximately $202.24 in her net monthly income. Thus, instead of a monthly surplus of $93.63, the Debtors will now have a monthly budget deficit of $108.61.

The Trustee contends, however, that a pay statement submitted by James Smith (apparently to the Trustee's office) shows that Mr. Smith's net monthly income is $2,462.00, not the $2,256.66, thereby resulting in net monthly income for the Debtors of approximately $3,666.00. With that amount of net income, the Trustee contends that the Debtors would have approximately $393.00 a month in disposable income to fund a hypothetical Chapter 13 Plan, before the reduction in Joyce Smith's working hours and monthly income.[2]

1. With the agreement of the parties, the Court kept the evidentiary record open for the receipt of this letter, which has been received by the Court and will be received in evidence, no objection having been made.

2. It is not clear to the Court how the Trustee arrived at the $393.00 figure. If the Debtors had net monthly income of $3,666.00 and expenses of $3,367.00, as the Trustee states in his Motion, that is a difference of $299.00, not $393.00. It should be emphasized, however, that the Trustee did not adduce evidence to show that James Smith's income is higher than the net of $2,256.56 a month shown in the amended Schedule I. The Trustee did not produce at the hearing or offer into evidence the "pay statement" referred to in the Motion. Therefore, the Court's analysis is based on the lower amount of net income ($2,256.56) shown in amended Schedule I. If James Smith's income is, indeed, higher than listed in the amended schedule, that means that the Debtors would have even more disposable

Additionally, the Trustee contends that the Debtors could reduce the following monthly expenses to more reasonable levels and thereby generate additional funds that could be used to fund a Chapter 13 Plan:

Telephone—$186.00
Food—$700.00
Clothing—$150.00
Laundry and dry cleaning—$50.00
Recreation—$150.00
Charitable contributions—$150.00
Gifts—$100.00

The Debtors listed $38,647.00 in primarily consumer debts in their Schedule F.

## DISCUSSION

Section 707(b) of the Bankruptcy Code[3] provides that a court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b); *In re Beckel*, 268 B.R. 179, 182 (Bankr.N.D.Iowa

income with which to fund a Chapter 13 Plan, thereby further reinforcing the Court's decision in this case.

3. b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)). 11 U.S.C. § 707(b)

2001). "Substantial abuse" is not defined in the Bankruptcy Code, but in the Eighth Circuit, the primary factor in determining substantial abuse is the debtor's ability to repay his debts out of future income or, put another way, the ability to fund a hypothetical Chapter 13 plan. *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1288 (8th Cir.1997); *In re Walton*, 866 F.2d 981, 985 (8th Cir.1989); *In re Bicsak*, 207 B.R. 657, 659 (Bankr.W.D.Mo.1997). In making this determination, the Court must determine whether the Debtors have excess or disposable income that would be available to fund a Chapter 13 plan.

■ There is a statutory presumption in favor of granting the debtor a discharge in a Chapter 7 proceeding. Section 707(b) of the Code, which permits the filing of motions such as the one before the Court, specifically states:

There shall be a presumption in favor of granting the relief [i.e., discharge] requested by the debtor.

11 U.S.C. § 707(b).

Because a presumption exists in favor of according relief to a debtor, the burden of proof is on the Trustee to show that a debtor's case should be dismissed. *In re Lee*, 162 B.R. 31, 33 (Bankr.N.D.Ga.1993). "Most importantly, ... the United States trustee bears the burden of overcoming the strong presumption in favor of granting the discharge requested by the debtor." *In re Farrell*, 150 B.R. 116, 118 (Bankr.D.N.J.1992).

With these guidelines in mind, the Court will review the evidence in light of the evidence adduced at the October 11 hearing.

■ First, though, a preliminary matter should be addressed. The Trustee asserts that the Debtors have no dependents, although he does not dispute that the Debtors' 20-year-old daughter still lives at home and attends college. The Debtors contend that it is appropriate to include expenses on their schedules for their daughter because they are obligated, under Missouri law, to provide for her support until she reaches the age of 22, if she is enrolled full-time in an institution of higher learning. The Court agrees that the Debtors should be allowed to include expenses for the daughter in their budget. Under Missouri law, if parents are divorced, the parental support obligation continues until a child completes his or her college or post-secondary vocational education or reaches the age of 22, whichever occurs first. Mo.Rev.Stat. § 452 .340(5). This support obligation may be contrasted with the exemptions allowed debtors pursuant to Mo.Rev.Stat. § 513.440. That statute allows debtors in bankruptcy to claim a $250.00 exemption for each child under the age of 18 and living in the debtors' home (or for which the debtors are providing support). Presumably, the Trustee's argument for exclusion of any expenses for the daughter is based on the fact that, in these bankruptcy proceedings, the Debtors cannot claim the statutory dependency exemption for the daughter. The Court does not agree. Just because a debtor may not claim an exemption for a child because the child is 18 or over does not mean that the debtor may not claim living expenses for a child 18 or over living at home, whether attending college or working or pursuing other interests. Whether such expenses are appropriate, however, might be another question, and that will be left to the Court to decide under the particular circumstances of the case. Furthermore, the Debtors would be entitled, under the circumstances shown here, to claim their daughter as a dependent on their federal income tax returns 26 U.S.C. § 152. Accordingly, the Court will not disallow living expenses that are claimed by the Debtors

for their 20–year–old daughter; instead, the Court will consider the daughter's expenses as a part of the overall consideration of the reasonableness of the Debtors' family living expenses.

■ Turning to an examination of the Debtors' living expenses, the Court finds that the Debtors could reasonably be expected to reduce their living expenses significantly and thereby produce funds that could be used to fund a Chapter 13 Plan and repay their creditors, in substantial part, out of future income.

(1) Telephone expenses. The Debtors have listed telephone expenses of $186.00 a month. Joyce Smith testified that the Debtors have two land lines (the second is for their Internet access) and one cellular telephone, which combined cost them approximately $80.00 a month.[4] The rest of the expense, roughly $100.00, is incurred because their daughter spends a great deal of time talking long distance to her boyfriend. Joyce Smith stated that she and her husband have attempted to monitor their daughter and reduce this expense, but have been unsuccessful. The Court considers the telephone expense of $186.00 unreasonable, particularly since the major-·ity of it is incurred for nonessential purposes.[5] As the Court observed at the hearing, the Debtors could greatly reduce or possibly eliminate their long distance charges by adding long distance services to their existing cellular telephone service, and the Court hopes the Debtors have followed that advice. The Court, accordingly, finds that the Debtors could, and should, reduce their telephone expenses by at least $86.00 a month, to $100.00 at maximum.

(2) Food expenses. The Debtors list their monthly food expenses at $700.00. Debtors' counsel contends this is not excessive, pointing out that this is only $7.77 a day per person, which is "far less" than the per diem rate allowed by the federal government. However, the Trustee noted that this District's Chapter 13 Trustee allows $150.00 a month per person as a reasonable food allowance, and Joyce Smith admitted that the Debtors eat out "too much." She further testified that she often takes her lunch to work, and that James Smith is able to eat lunch at home every day; thus, their lunch expenses are not significant. The Court agrees with the Trustee, and believes that the Debtors should reduce their food expenses to not more than $500.00 a month, a savings of $200.00 a month from their scheduled expense.

(3) Clothing expense. The Debtors have listed a clothing expense of $150.00 a month and a laundry and dry cleaning expense of $50.00, for a total of $200.00, which the Trustee asserts could be reduced by as much as $72.00 a month, to $128.00. The Court disagrees. The Trustee's argument is based on clothing and laundry and cleaning expenses for just two persons, not three. The Court does not believe it is unreasonable to expect that the Debtors would provide at least some of their daughter's clothing and at least help with her laundry and dry clean-

---

4. Joyce Smith also testified that the Debtors pay $20.00 a month for their Internet service. This expense item is separately listed in their Schedule J, however, and therefore is not included in their monthly telephone expense of $186.00.

5. Having raised two children, the Court is well aware that boyfriends and girlfriends feel they must talk and breathe to each other frequently, and sometimes at great length. However, $100.00 in long distance charges each month for such talking and breathing is excessive. And, if the boyfriend is paying a similar amount in long distance charges, the expense being incurred is doubly excessive.

ing expenses. Also, presumably Joyce Smith must wear nice work clothes in her employment as a secretary at the University, and the Court suspects that James Smith's work as a cable splicer for the telephone company is hard on work clothes. For these reasons, the Court does not find the Debtors' clothing and laundry and cleaning expenses of $200.00 a month unreasonable.

(4) Recreation expenses. The Trustee contends that the Debtors' recreational expenses of $150.00 a month are excessive and could be reduced. Joyce Smith testified that most of their recreational expenses are incurred in camping, which they have done in the summers for many years. They do not rent movies or go to the movies frequently. James Smith has cut back on the amount of golf he plays, and Joyce Smith has given up golf entirely. While camping can be a very inexpensive form of recreation, the Debtors have allocated $1,800.00 a year for recreation, and the Court agrees with the Trustee that such an expense is unreasonable under the circumstances. As part of their belt tightening, the Debtors could, and should, reduce their recreational expenses to a maximum of $100.00 a month, a savings of $50.00 a month.

(5) Charitable contributions. The Debtors have listed charitable contributions of $150.00 a month. However, the only charitable contribution Joyce Smith was able to identify was a contribution of $20.00 a week to the Debtors' church, or approximately $87.00 a month. Section 707(b) expressly prohibits the Court, in determining whether to dismiss a case for substantial abuse, from considering qualified (i.e.,

legitimate) charitable contributions.[6] In view of this statutory prohibition, it would be improper for the Court to disallow charitable contributions of $150.00 a month if the Debtors were, in fact, making such contributions. However, the evidence indicates that they are making charitable contributions of only about $87.00 a month. Allowing for some minimal contributions other than to their church, the Court would consider charitable contributions of $100.00 a month to be reasonable. This results in a further reduction in expenses of $50.00 a month.

(6) Gift expense. The Debtors have listed $100.00 a month for gifts for Christmas, birthdays, and special days during the year. Joyce Smith admitted that she sometimes overspends for gifts, and the Court agrees that $100.00 a month is an excessive amount for gifts in a family of three persons when that family is in bankruptcy. As part of their belt tightening in these circumstances, the Debtors should be able to reduce their gift expense to $720.00 a year, or $60.00 a month, a savings of $40.00 a month.

The Court has examined the Debtors' other expenses as set out on Schedule J and does not consider any of the other expenses to be unreasonable.

In summary, then, the Court finds that the Debtors are incurring $426.00 a month in expenses that are not reasonably necessary for their and their daughter's support and that could be available as disposable income to fund a Chapter 13 Plan. 11 U.S.C. § 1325(b)(2) defines "disposable income" as income received by the debtor that is not reasonably necessary to support the debtor, the debtor's dependents, or the

---

**6.** In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)). 11 U.S.C. § 707(b).

debtor's business. 11 U.S.C. § 1325(b)(2); *Koch,* 109 F.3d at 1289; *Bicsak,* 207 B.R. at 661–62. The amounts set out in the Court's analysis are disposable income under this definition.

■ As noted earlier, as a result of the reduction in Joyce Smith's working hours and income during the school year, the Debtors would have a monthly household budget deficit of $108.61. However, reductions in their expenses of $426.00 as set out above will result in net disposable income of $317.39. This amount would be available to fund a Chapter 13 Plan. At $317.00 a month, the Debtors could pay $11,417.00 to the Chapter 13 Trustee in a 36–month plan. After allowing 10 percent for the Trustee's fees, the creditors could be paid approximately $10,000.00. With $38,647.00 in unsecured consumer debt, the Debtors could, therefore, pay their unsecured creditors approximately 26 percent of the amounts they are owed. If the plan were to be extended to 60 months, as permitted (but not required) under the Bankruptcy Code, the payments would total $19,020.00 and result in payment of almost 44 per cent of the unsecured debt, after deducting $1,900.00 for the Trustee's fees. In either case, this would represent a substantial payment to the unsecured creditors.

Although the courts seem to have emphasized the percentage of debt that could be repaid in making their substantial abuse analyses, neither Congress nor the courts have established a bright line test to be applied in these cases. *In re Praleikas,* 248 B.R. 140, 145 (Bankr.W.D.Mo. 2000). Such a test would certainly make this Court's job much easier. In *Walton,* the Eighth Circuit, while emphasizing the ability to repay, made it clear that the court may consider other factors, such as the petitioners' good faith and their unique hardships. *Walton,* 866 F.2d at 983.

■■ As the Trustee points out, Chapter 7 is intended to give "the truly needy a fresh start and not to give those who can afford to meet their obligations a head start," and Chapter 7 debtors are obligated to "demonstrate a sincere effort to 'tighten their belts'" so as to avoid the need for bankruptcy relief in the future. *In re Buntin,* 161 B.R. 466, 468 (Bankr. W.D.Mo.1993). In this case, the Debtors have not demonstrated that they have tightened their belts or that they are truly needy. To the contrary, the Court believes that the Debtors, with an income of almost $60,000.00 a year, have the ability to repay a substantial portion—at least 26 per cent—of their unsecured debts through a Chapter 13 plan, and that their Chapter 7 petition has not, at least in this respect, been filed in good faith.[7] The Trustee has overcome the presumption that the Debtors are entitled to a discharge in Chapter 7, and has demonstrated that, when all factors are considered, the Debtors have an ability to repay a substantial portion of their debts. The Debtors have not produced evidence of any

7. The Court wishes to emphasize that it does not believe the Debtors have acted with any improper motive or evil intent to avoid paying their creditors. On the contrary, the Court was impressed with the obvious honesty and sincerity of Joyce Smith, the only witness to testify at the October 11 hearing, and commends her for her candor and honesty. Nor does the Court believe that the schedules filed by the Debtors were in any way false or inaccurate. It appears from the exhibits offered in evidence that the Debtors had kept good records of their living expenses and had relied on those records in preparing their schedules. In this respect, they have done much better than the vast majority of debtors coming before this Court. All of this does not change the fact, however, that there is significant room for belt tightening on the part of the Debtors, so that their creditors can be paid a substantial amount of what they are owed.

unique hardships to convince the Court otherwise.

Accordingly, the Court will dismiss these Chapter 7 proceedings unless the Debtors desire to convert this case to a case under Chapter 13 of the Bankruptcy Code. The Court will allow the Debtors 20 days in which to file a motion to convert. If no such motion is filed within 20 days, this order will become final.

Therefore, it is

ORDERED that the Trustee's Motion to Dismiss for Substantial Abuse (Doc. # 11) be and is hereby GRANTED, that the Debtors be and are hereby granted 20 days in which to file a motion to convert to Chapter 13 if they desire to do so, and that this Order shall become final after the expiration of 20 days if a motion to convert is not filed.