**In re Angela M. MCLAUGHLIN, Brian D. McLaughlin, Debtors.**

No. 03–43467.

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

Jan. 15, 2004.

Barbara J. Williams, Kansas City, MO, for Brian D. McLaughlin and Angela M. McLaughlin.

Paula C. Acconcia, Office of the U.S. Trustee, Kansas City, MO, for U.S. Trustee Office.

### *MEMORANDUM OPINION*

JERRY W. VENTERS, Chief Judge.

On October 10, 2003, the United States Trustee ("Trustee") filed a motion to dismiss the Chapter 7 bankruptcy of Brian and Angela McLaughlin ("Debtors") for substantial abuse of the Bankruptcy Code under 11 U.S.C. § 707(b). The Court held a hearing on this matter at the United States Courthouse in Kansas City, Missouri, on November 4, 2003, and took the matter under advisement. Upon consideration of the motion to dismiss, the evidence adduced at trial, and the relevant law, the Court will grant the Trustee's motion to dismiss the Debtor's case, but will allow the Debtors 20 days to convert their case to Chapter 13.

## I. BACKGROUND

The Debtors filed for protection under Chapter 7 of the Bankruptcy Code on June 3, 2003. The Debtors listed primarily consumer debts in their schedules, consisting of unsecured indebtedness in the amount

of $69,466.20,[1] a mortgage in the amount of $126,000.00,[2] and other secured indebtedness of approximately $98,000.00, which represents the total amount owed on a 2003 Ford Expedition ($33,000.00), a 2003 Honda ($26,000.00), and a 2002 Harley Davidson Truck ($39,000.00). Both the 2003 Ford Expedition and 2003 Honda were purchased shortly before the Debtors filed for bankruptcy. After filing, the Debtors elected to surrender the Harley Davidson Truck to the secured creditor, but they chose to retain the 2003 Ford Expedition and 2003 Honda Accord. On December 10, 2003, the Chapter 7 trustee certified that there were no assets to administer for the benefit of creditors.

Brian McLaughlin works for a car dealership in Kansas City, Missouri, earning a net monthly pay of $3,504.76. Angela McLaughlin works as a parole officer earning a net monthly pay of $2,004.64, for a combined net monthly income of $5,509.40. The Debtors estimate that their monthly expenditures total $5,942.00, of which amount $1,190.00[3] represents automobile loan payments. The Debtors also amended Schedule J to reflect a monthly telephone payment of $125.00, and a $99.00 monthly cellular telephone payment, representing an increase from $75.00 and $40.00, respectively, from the Debtors' original schedule. Angela testified that the increase in the cellular telephone service was due to the expiration of their old cellular contract and the subsequent execution of a new one. Regarding the telephone bill, Angela explained that the Debtors spoke to friends and family in the

military who were stationed across the country and across the world.

When the Trustee examined Angela McLaughlin at the hearing regarding why the Debtors elected to purchase two new automobiles shortly before filing bankruptcy, Angela responded that the Debtors had three children under the age of twelve and, her vehicle, the 2003 Ford Expedition was necessary because it had three child safety belts in the rear seat. Both Angela and Brian need a vehicle because they have separate jobs in different parts of the city. While the Debtors shopped for less expensive vehicles that had three safety belts in the rear seat, Angela explained that Brian, a car salesman, was able to get a good deal on the 2003 Ford Expedition and a less expensive vehicle did not qualify for the same type of advantageous financing.

## II. DISCUSSION

The Trustee asserts that the Debtors are substantially abusing the Bankruptcy Code because they purchased new automobiles on the eve of bankruptcy, and but for that purchase, the Debtors would have the means to pay a substantial portion of their total unsecured indebtedness. The Court agrees.

Section 707(b) of the Bankruptcy Code provides that the Court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts, if the Court finds that granting the debtor relief would be a substantial abuse of the Bankruptcy Code. 11 U.S.C. § 707(b). There is a statutory presumption in favor of grant-

1. At least $34,500.00 of this amount constituted a student loan.

2. The Debtors mistakenly listed this amount as $126.00 in their schedules. The Debtors stated in Schedule J, however, that their monthly mortgage payment was $1,357.00.

3. This amount was originally stated to be $1,290.00, was later amended to be $1,330.00, and was represented at the hearing to be $1,190.00. Angela McLaughlin testified that the monthly payment on the 2003 Ford Expedition was $640.00, and the payment on the 2003 Honda was $550.00.

ing the relief requested by the debtor in determining whether to dismiss a case. § 707(b). The burden, even in the absence of the presumption, rests on the moving party. *In re Smith,* 269 B.R. 686, 689 (Bankr.W.D.Mo.2001). As the leading treatise on bankruptcy states:

> [T]he statutory presumption is obviously meant to be something more than simply a rule about the burden of proof, since that burden would already have been on the party seeking to dismiss the case.... It appears that the presumption is an indication that in deciding the issue, the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present.

6 *Collier on Bankruptcy* ¶ 707.04[5][a], p. 707–26 (Lawrence P. King et al. eds., 15th rev. ed. Matthew Bender 2003). *See also Harris v. United States Trustee (In re Harris),* 279 B.R. 254, 259 (9th Cir. BAP 2002) (noting that the lack of clarity in the statute was akin to inspired tergiversation and concluding that the burden of proof necessary to overcome the presumption was not "clear abuse," but was one of "substantial abuse" as stated in the statute). *See also Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 917 (9th Cir.1988) (stating that the presumption "is in reality a caution and a reminder to the bankruptcy court that the Code and Congress favor the granting of bankruptcy relief, and that accordingly the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present.").

■ Abuse of the Bankruptcy Code occurs when a debtor attempts to use the provisions of the Code to get a "head start" rather than a "fresh start." *See, e.g., In re Buntin,* 161 B.R. 466, 468 (Bankr.W.D.Mo.1993). In the Eighth Circuit, a primary factor indicating substan-

tial abuse of the Bankruptcy Code is the debtor's ability to repay debts out of future disposable income. *In re Walton,* 866 F.2d 981, 985 (8th Cir.1989). An appropriate method to make that determination is to determine what amount of indebtedness the debtor could repay in a hypothetical Chapter 13 plan—even though the debtor may not be eligible for relief under that Chapter. *Fonder v. United States,* 974 F.2d 996, 999 (8th Cir.1992). Thus, a debtor who filed under Chapter 7, but had enough disposable income to pay over two-thirds of all debts over three years, and 100% over five years, substantially abused Chapter 7 of the Bankruptcy Code. *Walton,* 866 F.2d at 984. Although a number of courts have considered the percentage of total indebtedness that could be repaid through a hypothetical Chapter 13 plan, there is no bright line test. *In re Praleikas,* 248 B.R. 140, 145 (Bankr.W.D.Mo. 2000). As stated by Judge Federman:

> While it may be true that the higher the percentage of debt a Debtor could pay with future earnings, the more likely it is that a court would find substantial abuse, the converse is not true. Otherwise debtors would be rewarded for having more debt, rather than less. Instead of the percentage of debt, the determination of a debtor's ability to fund a Chapter 13 plan is based on a consideration of the debtor's ability to make a substantial effort in repaying his or her debts.

*Id. See, e.g., Nelson v. Siouxland Fed. Credit Union (In re Nelson),* 223 B.R. 349, 353 (8th Cir. BAP 1998) (79.9% in three years); *Smith,* 269 B.R. at 692 (26% in three years, and 44% after five years).

■ In this case, the Trustee would have the Court reduce the $1,190.00 per month the Debtors make in car payments and the $224.00 spent on telephone services and use the excess income to fund a

Chapter 13 plan. The Court agrees with the Trustee that purchasing two new vehicles on the eve of bankruptcy is brazen behavior, and the Court finds that Angela's explanation that a relatively expensive 2003 Ford Expedition was necessary because it had three child safety belts in the rear seat is patently ridiculous. Although the Debtors did surrender the 2002 Harley Davidson truck, and unloaded a corresponding monthly payment of approximately $700.00, the purchase of two new vehicles illustrates that the Debtors were attempting to get a head start by filing for bankruptcy and not a fresh start. Nevertheless, the Court is sympathetic to the needs of working moms and dads, and recognizes, under the circumstances in this case, that two vehicles are necessary for the household. Debtors entering bankruptcy, however, are required to tighten their belts. Here, the Debtors could surrender their current vehicles, and purchase two less expensive automobiles with monthly payments not exceeding $800.00. This results in a net monthly savings of $390.00. With less expensive automobiles, the Debtors should also be able to reduce their auto insurance premiums of $250.00 per month. Likewise, the Court finds that paying $225.00 per month in telephone services is excessive, and finds it appropriate to reduce this monthly expense to $175.00.

A review of the Debtors' other monthly expenses also reveals that the Debtors can engage in some belt-tightening. The Debtors list $350.00 per month in transportation expenses—other than automobile insurance and car payments. The Court believes that the Debtors could reduce this expense to $250.00 per month. Likewise, the Debtors list $125.00 per month in cable and internet service, and the Court believes that this expense could be reduced to $75.00 per month. In total, the Court finds that the Debtors could reduce their monthly expenditures by at least $590.00

per month, resulting in monthly expenses in the amount of $5,352.00. When compared with a total monthly net income of $5,509.40, this results in $157.40 per month which the Debtors could contribute to a Chapter 13 plan.

In sum, the Debtors' behavior in purchasing two new automobiles preceding their bankruptcy filing is troublesome. The Court recognizes the logic of surrendering the 2002 Harley Davidson truck because it was too expensive for the Debtors to afford, and the Court would not be overly concerned with a pre-petition purchase of a more economical new/pre-owned vehicle to replace an automobile surrendered post-petition. The Debtors' actions, however, in purchasing two new and relatively expensive automobiles on the eve of bankruptcy indicates that the Debtors likely have engaged in some calculated manipulation of the Bankruptcy Code. Additionally, apart from a generally non-dischargeable student loan debt, the Debtors have relatively few unsecured debts. Considering the Debtors' net monthly income, and allowing for some lifestyle adjustments for living within their means, the Debtors could likely avoid bankruptcy entirely. Furthermore, the Court believes that the Debtors' monthly expenditures are somewhat overinflated. This combination of factors leads the Court to conclude that the Debtors are inappropriately abusing their right to file a Chapter 7 bankruptcy, and that the Debtors have the means to repay a portion of their debts through a Chapter 13 plan.

## III. CONCLUSION

The Court will grant the Trustee's motion to dismiss this case under 11 U.S.C. § 707(b), and will allow the Debtors 20 days to file a motion to convert to Chapter 13. If they fail to do so, this Chapter 7

case will be dismissed without further notice or hearing.

This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 9014(c) and 7052. A separate order shall be entered pursuant to Fed. R. Bankr.P. 9021.